UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. WMN-02-754 |
| | ) | |
| **JOHN RACHEL, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION TO MOTION TO QUASH
PREJUDGMENT WRIT OF ATTACHMENT**

The United States of America, by and through the United States Attorney for the District of Maryland, hereby files this Opposition to Defendants' Motion to Quash the Writ of Attachment entered by this Court on November 3, 2003.

**I.   INTRODUCTION**

On July 10, 2003, this Court entered an order granting summary judgment for the United States, and concluding that the Defendants had submitted false claims to the government in violation of the False Claims Act. On October 30, 2003, the government filed a Verified Application for Pre-judgment Relief under the Federal Debt Collection Procedure Act. 28 U.S.C. § 3101 (a). In support of its application, the government submitted several documents and a declaration which demonstrated the probable validity of the debt, and reasonable cause to believe that Defendants are about to transfer the property or convert it to moveable assets. The Court issued the requested Writ on November 3, 2003.

Defendants have now filed a motion to quash the writ, arguing that the government has not adequately established the amount owed, that the government has not established that the Defendants have a scheme or plan to transfer or conceal assets from the government through the sale

of their farm, and that the attachment is unreasonable as the government has alternate remedies (including an action for fraudulent conveyance) available to it.

However, the government is not required to show with certainty the exact amount owed, or prove that the Defendants have a present actual intent to defraud the government through an illegal transfer of property or funds.  The government need only show probably validity of the debt and reasonable cause to believe that Defendants are about to take actions which, combined with the knowledge of Defendants' past course of conduct, lead the Court to believe that the Defendants might take actions which would hinder the government's ability to collect on the final judgment. Defendants' claim that the government has available to it the alternative remedy of an action for fraudulent conveyance after the fact, to collect in the event that the Defendants do transfer the proceeds of the sale of the farm to some unreachable asset, does not lend support to their argument that they have no intent to do so, and does not provide the government, or this Court, with an adequate alternative remedy to the present attachment.

## II.   ARGUMENT

### A.   The Government Has Established the Probable Validity of the Debt.

Defendants first challenge to the writ of attachment is that the government has not adequately established the amount owed.  Specifically, they claim that the amount of the debt is "unliquidated and unascertainable by calculation." (Def. Motion to Quash, ¶3).  Defendants also argue that "liability has not yet been determined by the Court, and it is surmise and conjecture to conclude how much, if any, money is owed. . . ." (Def. Motion to Quash, ¶ 8).  Interestingly, these arguments stand in stark contrast to earlier remarks made during a conference call with the Court, when Defendants' counsel admitted that the resolution of the damages portion of the case was a mere

"mathematical computation."

First of all, liability has in fact been established. That was the import of the Court's July 10, 2003, decision. When the Court granted the government's motion for summary judgment as to liability on Counts I, II, and III of the Complaint, it effectively held that the Defendants were guilty of violations of the FCA, and are liable to the government. What was not determined by the Court in its July 10, 2003, decision, was the precise amount owed.

Moreover, contrary to the argument made by Defendants, in order to secure a prejudgment attachment under the FDCPA, the government need not establish a precise monetary judgment, calculated with precision. It is simply not necessary at this stage for the government to prove every dollar of the alleged debt, as the Section 3101(d)(2) hearing is not intended to be a trial on the merits. U.S. v. Teeven, 862 F.Supp. 1200, 1211 (D.Del. 1992). Nor is the government required, in the absence of contradictory evidence, to eliminate every conceivable explanation concerning the specific nature of the debt, in order to make a showing of probable validity. Id.

> Rather, the FDCPA expressly contemplates that once the government has met its burden of demonstrating the "proabable validity," the party seeking to have a prejudgment order quashed must make an affirmaitive showing as to why the debt is not probably valid.

Teeven, 862 F.Supp. at 1211. Here, the Armstrong declaration and the other exhibits submitted with the Application for Prejudgment Writ clearly demonstrate that the Defendants are indebted to the United States for single damages of approximately $539,736, together with statutory multiples permitted under the False Claims Act (treble damages), civil penalties, interest and costs. (Armstrong Declaration, ¶ 9). The documents provided by the government, along with that declaration, clearly demonstrate the probably validity of the debt claimed, at the level of specificity envisioned by the FDCPA. In order to overcome that showing, and quash the writ, the Defendants

have the affirmative obligation to come forward and demonstrate, with contradictory evidence, why the writ should be quashed. Teeven at 1211-12. Where, as here, the Defendants have not offered significant rebuttal evidence to support the quashing of the writ, this Court should conclude that the government has demonstrated the probable validity of the debt. Id.

**B.     The Government Has Established that the Defendants' Conduct will Hinder or Delay the Government in its Effort to Recover a Debt.**

Defendants have also argued that the government has not established that the Defendants have a plan or scheme to transfer or conceal assets from the government through the sale of their farm. However, again, Defendants have mistaken the applicable legal standard to be applied. Moreover, the facts presented here more than demonstrate the Defendants' fraudulent tendencies, and merit protection of a substantial remaining asset from dissipation before entry of a final monetary judgment in this case.

In order to meet the standard for prejudgment relief, the government need only demonstrate reasonable cause to believe that the debtor's conduct will have the effect of hindering or delaying the government in its effort to recover a debt. Teeven, 862 F.Supp. at 1213. The government need not demonstrate that the Defendants have a present actual intent to defraud. Id. Nor is the government required to show that debtor's actions are secretive. Id at 1214, n.12.

Here, the government has presented evidence that:

(1)     John Rachel was indicted on April 15, 1999 for Conspiracy, 18 U.S.C. § 371; Unlawful Kickbacks, 41 U.S.C. § 53; and, Engaging in Monetary Transactions in Property Derived From Specific Unlawful Activity, 18 U.S.C. § 1957. On July 19, 1999, John Rachel pled guilty to taking unlawful kickbacks in conjunction with the FAA contract and on October 29, 1999, was sentenced to one-year imprisonment and fined $10,000. On August 25, 2000, Mr. Rachel was debarred from Government contracting, pursuant to the Federal Acquisition Regulations § 9.406 for a period of three years. (Armstrong Decl. at ¶ 3).

(2) The Treasury Inspector General for Tax Administration's (TIGTA) investigation revealed that on November 17, 1994, RGI entered into a "Teaming Agreement" with DMSI to cooperate in obtaining and satisfying the IRS contract for computer and maintenance repair. John Rachel is the President of RGI and wholly owns and controls the company. RGI was identified as a subcontractor by DMSI in the documents DMSI submitted to the Government in connection with the MNOMAP contract. John Rachel, using his wife's name and identity, with her consent, incorporated Computer Specialties of Maryland (CSM). Using CSM to hide their activities, John and Priscilla Rachel submitted claims for inflated amounts to the government, through DMSI. The overpayment received by Defendants has been conservatively calculated at approximately $539,736. (Armstrong Decl. at ¶¶ 7-9).

(3) On March 11, 2002, the Government filed a civil action in the U.S. District Court, District of Maryland, against John Rachel, Priscilla Rachel, RGI, and CSM. In this lawsuit, the Government alleged that the Defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(2), as well as common law theories of fraud, negligent misrepresentation, breach of contract, payment under mistake of fact, and unjust enrichment. The Government alleged that RGI-owner, John Rachel, created CSM, a shell corporation for the purpose of inflating costs and issuing false invoices to RGI which were then used to bill DMSI. This enabled CSM to make a profit of 300% to 400%, which the violated the provisions of the Civil False Claims Act. (Complaint).

(4) On July 10, 2003, this Court issued a Memorandum Opinion which concluded, "with little difficulty" that "the CSM markup of the invoices was fraudulent" (Mem. Op. at p. 19) and granted the government's motion for summary judgment, on liability under the FCA. (July 10, 2003, Memorandum Opinion of William N. Nickerson).

(5) The overpayment of approximately $539,736 constitutes the approximate single damages in the case. Therefore, single damages, together with statutory multiples permitted under the False Claims Act (treble damages), civil penalties, interest and costs, the total damages award could well exceed two million dollars. (Armstrong Decl. at ¶ 9).

(6) The Defendants have listed for sale certain real property in Virginia which has a value of at least $895,000, described as follows: 11715 and 11801 Aden Road, Nokesville, Virginia, parcel no. 081-01-000-0077A, and parcel No. 7493-99-6107, Liber 1157, Folio 1474. (Armstrong Decl. ¶ 20, and attachments).

This evidence demonstrates that the Defendants have committed fraud in the past, that they have been found liable for fraud in the instant action, that the liability in this action will likely exceed two million dollars, and that the Defendants are in the process of attempting to sell what appears to be

their only substantial asset. These facts more than meet the standard under §3101 of the FDCPA. *See* Teeven, 862 F.Supp. at 1224, n. 42 (sale of properties valued in the millions and conversion of them to liquid assets would surely have the effect of hindering the recovery of debt by the United States, since liquid assets are easily hidden and commingling of the funds from the sale of properties and purchase of new properties would hinder the government in tracing the monies). The government need not demonstrate with certainty that the Defendants have a "plan" to hide the proceeds of the sale. The Defendants' history of fraudulent behavior, the fact that the proceeds from the sale ***could*** easily be hidden, and that such would indisputably have the ***effect*** of hindering the government's efforts at collecting the debt, is sufficient. Teeven, 862 F.Supp. at 1225 (emphasis in original).

C.   **The Government Does Not Have Sufficient Alternative Remedies.**

Finally, Defendants have argued that the attachment is unreasonable as the government has alternate remedies (including a post-hoc action for fraudulent conveyance) available to it. However, the Defendants have not proffered a valid alternative to the current writ of attachment. Therefore, the Court should not permit them to avoid it.

One of the grounds on which a debtor may challenge the issuance of a prejudgment remedy is the availability of alternative remedies which would adequately protect the government's interests. Here, however, the only alternative remedy suggested by the Defendants, is not a remedy at all: an action for fraudulent conveyance. Defendants postulate that if the government is correct, and Defendants intend to transfer the proceeds from the sale of the farm to some other property or person in order to make it unreachable by the government, the government can file an action for fraudulent conveyance. However, the filing of an action sometime later, after the proceeds of the sale of the

property may have been dispersed among numerous alternate investments or family members, will not adequately protect the government's interest. First of all, that proposed "solution" would place the burden on the government of securing a current and correct inventory of all of Defendants' assets, and monitoring them on a regular basis. The government would then have to attempt to trace the proceeds of any attempted transfers, and then file a separate action for fraudulent conveyance, in which the government would have to meet the high standard for pleading a cause of action for common law fraud. That simply is not a remedy which compares to the current writ in its ability to adequately secure the Defendants' assets.

While the Court, in considering a motion to quash prejudgment relief, may consider less severe alternatives, it is the burden of the debtor/ Defendants to come forward with an adequate alternative. Where the Defendants fail to do so, the Court, pursuant to its authority under the FDCPA, is obligated to fashion a remedy which fashion a remedy which will adequately protect the government's interests. Teeven, 862 F.Supp. at 1215.

As a corollary to this argument, Defendants complain that their need to sell the farm is occasioned by the fact that it takes great effort to maintain it, and they are no longer able to do so. However, that is not a concern which should so offend the Court's sense of equity, that it would merit quashing of the writ, without the provision of an adequate alternative remedy. Teeven, 862 F.Supp. at 1215. If the Defendants' concern is only that they cannot care for the farm, the government is willing to consent to the sale of the farm at a reasonable market value, as long as one hundred percent of the proceeds are placed in escrow or trust, and maintained in accounts reported to the Court. The Defendants would then be able to rid themselves of the extra work entailed in maintaining the farm, without dispersing the value of one of their sole remaining substantial assets.

IV.   **CONCLUSION**

As this Court must have already concluded in its review and grant of the government's application for pre-judgment attachment, here attachment is warranted because the sale of the property is likely to result in the proceeds of the sale being placed beyond the reach of the United States. Defendants have not presented any evidence which presents a legitimate challenge to the probable validity of the debt, the need for the relief, or the availability of adequate alternative remedies. Therefore, the Court should deny Defendants' Motion to Quash.

Dated:   February 2, 2004

                                Respectfully submitted,

                                Thomas M. DiBiagio
                                United States Attorney

                              By:_____/s/_____
                                Ariana Wright Arnold
                                Assistant United States Attorney
                                Federal Bar No. 23000
                                6625 United States Courthouse
                                101 West Lombard Street
                                Baltimore, Maryland 21201-2692
                                (410) 209-4883

                                *For Plaintiff, United States of America*