IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| **Plaintiff** | : |
| | : Case No. WMN-02-754 |
| v. | : |
| **JOHN RACHEL, et al.** | : |
| **Defendants** | : |

...oOo...

Declaration of Douglas S. Luzier

I, Douglas S. Luzier, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and ability.

1. I am a special agent of the United States Department of the Treasury. I have been a special agent since May 21, 2000. Before becoming a special agent, I was an auditor for the Department of the Treasury.

2. In June, 1998, while still an auditor, I was assigned to assist in an ongoing investigation of allegations of fraud in contracts to provide services to the Internal Revenue Service. As part of that investigation I reviewed many boxes of documents which had previously been gathered in the investigation.

3. During my analysis of the documents I determined that John Rachel and his wholly owned businesses RGI, Inc. and Computer Specialties of Maryland, Inc. (CSM) had been involved in a scheme to defraud the government of substantial sums of money by issuing fraudulent invoices from CSM to RGI for goods and services under what was known as the MNOMAP contract. RGI then claimed the inflated charges as its "cost," thereby insulating the

1

fraud from discovery. Prime contractor Diez Management Systems, Incorporated ("DMSI") unwittingly based its invoices to the United States upon these false and fraudulent invoices from RGI and CSM. The Declaration of Assistant Special Agent In Charge William Harry Armstrong describes the fraud case in more detail. I was asked to analyze the invoices and payments associated with the MNOMAP contract to determine the amount of the government's loss. I submit this declaration in support of the government's Motion for Summary Judgment on Damages.

    4. Exhibit A attached hereto is a Summary Spreadsheet I prepared, with the assistance of auditor Randy Gregory, Treasury Inspector General for Tax Administration (the "Summary Spreadsheet"). The Summary Spreadsheet is a schedule of "invoices" relative to the Hinge Repair Kits on the MNOMAP contract. It includes TDR invoices to RGI/CSM, CSM invoices to RGI, RGI invoices to DMSI, and DMSI invoices to the IRS, as well as the payments associated with these invoices.

    5. The Summary Spreadsheet essentially schedules the complete set of the invoices and payments set forth therein. A set of these documents was provided free of charge to defense counsel Ed Tolchin during discovery in this matter, and another copy is submitted herewith as Exhibit B to this Declaration.

    6. During my deposition in this case, held on December 18, 2002, Assistant United States Attorney Tamera L. Fine reviewed a complete contract "cycle" with me while I prepared a draft spreadsheet much like the Summary Spreadsheet, although containing much less information. That represented one complete series of invoices from TDR to CSM to RGI to DMSI to the IRS, and one complete series of payments for those invoices, flowing from the IRS to DMSI to RGI to CSM to TDR. The transcript for this deposition, along with the relevant

documents, including invoices, checks and the draft spreadsheet, were previously submitted with the government's Motion for Summary Judgment on liability issues, and are resubmitted as Exhibit C herewith, for the convenience of the Court.

      7. The Summary Spreadsheet has a series of eight columns representing, from left to right, information concerning 1) TDR invoices to CSM (and to RGI before CSM was operating), 2) CSM Invoices to RGI, 3) RGI Invoices to DMSI, 4) DMSI invoices to the IRS, 5) Payments from the IRS to DMSI, 6) payments from DMSI to RGI, 7) payments from RGI to CSM, 8) payments from RGI/CSM to TDR. Each of the first four columns (representing invoices) contain the date of the invoice, the number of hinges the invoice included, and the invoice amount attributable to the hinges. Each of the last four columns (representing payments) contain the date of the payment, the amount paid, and the number of hinge repairs included in the payment.

      8. Essentially, I scheduled each and every invoice and each and every payment relevant to the hinge repair portion of the MNOMAP contract. Figures taken directly from invoices are typed. Figures I computed are handwritten. An example of a "computed" number is the amount of an invoice or payment attributed to the hinge repairs, when the actual DMSI invoice or IRS payment did not specifically identify this amount. I computed this amount by tracing what was invoiced from the subcontractors for the hinge repairs and adding in the five percent allowed contract markup.

      9. As set forth in the Summary Spreadsheet, there were 26 invoices requesting payment that were submitted by DMSI to the Internal Revenue Service, an agency within the U.S. Department of Treasury. Included in these invoices were services by RGI/CSM and TDR for the Hinge Repair Kits. The DMSI invoices included the amounts invoiced to them from RGI, CSM,

3

and TDR. DMSI paid RGI $643,365 for the Hinge Repair Kits. RGI/CSM paid TDR an amount of $132,971 for their services on the Hinge Repair Kits.

10. When this case was evaluated for prosecution it was determined that certain of the invoices were submitted outside of the statute of limitations. The complaint was filed March 11, 2002. As a result, four of the 26 invoices to the IRS must be excluded from the analysis. These are set forth on the first two pages of the spreadsheet (Exhibit A, pages 1/2 and 3/4). This brings the number of false claims to the IRS down to 22.

11. In addition, in order to calculate the overpayment or fraud to RGI/CSM, credit must be given for an allowable General & Administrative (G&A) cost, or mark-up cost, by each company. Since the contract allowed a 5 percent markup, that is what should be applied in this case.

12. The Declaration of Assistant Special Agent In Charge William Harry Armstrong makes these adjustments and computes the final loss amount, triple damages, and penalties.

I declare that under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                      Douglas S. Luzier
                                      _____
                                      Special Agent Douglas S. Luzier

4