IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| Plaintiff, | : | |
| v. | : | **Civil No. WMN-02-754** |
| **JOHN RACHEL, et. al**. | : | |
| Defendants | : | |

...oOo...

**MEMORANDUM IN SUPPORT OF MOTION TO
STRIKE AND/OR LIMIT EXPERT TESTIMONY BY DARRELL J. OYER**

The United States of America, by and through undersigned counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Jamie M. Bennett and Michael DiPietro, Assistant United States Attorneys for said District, submits this Motion and Memorandum of Law in support of Plaintiff's Motion to Strike and/or Limit Expert Testimony by Darrell J. Oyer.

**I.   INTRODUCTION**

Plaintiff has designated Darrell J. Oyer as an expert, specially retained for this litigation. However, the opinions expressed by Mr. Oyer were not the subject of timely disclosures under Rule 26(a)(2). Moreover, Mr. Oyer seeks to testify both about matters that are not relevant to this case, and also about the legal issues in this case. Therefore, under Federal Rule of Civil Procedure 26(a) and Rule 702 of the Federal Rules of Evidence his proposed testimony is inadmissible, and should be excluded by this Court.

**II.   FACTUAL HISTORY**

Plaintiff filed a Complaint alleging that the defendants are liable to the government under

the False Claims Act and several common law theories, including common law fraud, unjust enrichment and payment under mistake of fact on March 11, 2002. The relevant facts are set forth in the Fourth Circuit's opinion reversing this Court's order granting Summary Judgment to the plaintiff. <u>United States v. Rachel</u>, 208 Fed. Appx. 236, 2006 WL 3522228 (4th Cir. 2006). On July 23, 2002, the Court issued its first scheduling order in this matter. (Docket Entry No.8). That Order provided that Defendant's Rule 26(a)(2) expert disclosures were to be provided by October 21, 2002, and that all discovery was to be completed by December 5, 2002. <u>Id</u>. That Order was subsequently amended to provide for discovery to be completed by December 19, 2002. (Docket Entry No. 19)

On July 31, 2007, four and a half years after discovery ended in this case, the defendants filed a Rule 26(a)(2) Statement, indicating that Mr. Oyer, would be called at trial. Exh. 1. Mr. Oyer is designated as an expert: (1) in the government acquisition process applicable in this contracting circumstance and RGI's compliance with applicable government contracting rules and regulations; and (2) as an expert in the "reasonableness" of the cost "estimating" process and price for the item at issue in this matter (the hinge repair kit). His opinions are based upon his own government contracting experience and his experience as a Certified Public Accountant. <u>Id</u>.

### III.   ARGUMENT

Mr. Oyer's opinions were provided too late, are irrelevant to this case and/or are related to legal issues, for which expert testimony is not admissible. For these reasons this Court should strike or limit his testimony as set forth below. In the event that the Court decides not to strike the expert testimony, the government requests: (1) an opportunity to depose Mr. Oyer before trial; and (2) an opportunity to name an expert in rebuttal

A.   **The Court Should Limit Mr. Oyer's Testimony as Defendant Failed to Comply with the Disclosure Requirements of Rule 26.**

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides in pertinent part:

(A)   In addition to the disclosures required by paragraph (1), a party will disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B)   Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Rule 26(a)(2).

Further, Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e) ***is not***, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1) (emphasis added). "Rule 37(c)(1) is a 'self-executing sanction for failure to make a disclosure required by Rule 26(a), without further need for a motion under [Rule 37](a)(2)(A).'" <u>Sullivan v. Glock, Inc.</u>, 175 F.R.D. 497, 503-04 (D. Md. 1997)(Grimm, J) (quoting Commentary to Fed. R. Civ. P. 37, 146 F.R.D. 401, 691 (1993)).

The purpose of the court's application of Rule 37 sanctions to expert disclosures is clear: a party's experts should not be permitted to testify when allowing them to do so would "undercut[]

-3-

the very purpose of the pretrial scheduling order -- including the important goal of setting a specific and limited period for discovery -- and rewards dilatory practices by the party which failed to make proper Rule 26(a)(2) disclosures." Sullivan, 175 F.R.D. at 505.

In Sullivan this Court noted that "the entire structure of the rules of procedure governing pretrial preparation, expert disclosures under Rule 26(a)(2) and discovery in general, underscore the need for a fixed period of discovery which ends at a date certain well before trial. Thus, last minute discovery should be strongly discouraged, absent truly exigent circumstances." Id. at 506. The Court also observed:

> [T]here is an important interrelationship between the expert disclosures required by Rule 26(a)(2) and the other forms of discovery which must be recognized by counsel, who are obligated to comply with all of the requirements for each component, or risk the adverse consequences of failing to do so. Therefore, ***it is incumbent upon counsel to make full and timely disclosures of information regarding their retained experts,*** supplement them promptly when required, responsively answer interrogatories directed towards experts, and supplement these answers if warranted. Failure to do so may well result in the exclusion of the testimony of the expert at trial, in whole or in part. The days when counsel may 'hide the ball' regarding expert disclosure, and intentionally provide a little, but by no means complete, information about the expected expert testimony are over, and those who continue to do this should not be rewarded for doing so**.**

Sullivan, 175 F.R.D. at 506 (emphasis added).

In Congressional Air, United States Magistrate Judge Charles B. Day of this Court considered a motion to strike a new report offered by a properly designated expert, where the supplemental report was provided more than six months after the applicable deadline, and held that "[t]o allow Congressional's proposed 'supplementation,' would create the proverbial 'moving target' that is so offensive to civil litigants." Congressional Air, Ltd. V. Beech Aircraft Corp., 176 F.R.D. 513, 516 (D. Md. 1997)(Day, J.). The reasoning behind the Court's decision was clear:

> If parties are allowed to change the nature and scope of their expert's opinions after the Court has imposed deadlines and as late as the time of submission of the Pre-Trial Order, parties would in effect be encouraged to wait until such time to make known new theories, thereby minimizing the opportunity for the exploration of countervailing opinions. Such "trial by ambush" is precisely what the 1993 revision of the Federal Rules is attempting to eliminate.

176 F.R.D. at 516.  These same considerations are even more forcefully present here, where the expert report was not disclosed until years after discovery was closed, on the virtual eve of trial.

**B.    Mr. Oyer May Not Be Permitted to Testify As to the Ultimate Issue in this Case: Whether The Defendant Was Required To Comply With TINA As A Matter of Law.**

An additional problem presented by Mr Oyer's proposed testimony pertains to the fact that he will testify about the ultimate legal issue in this case. For example, among other things, Mr. Oyer opines that "the government has no right to seek a price reduction from RGI and the RGI invoices to DSMI were accurate and complaint with applicable contracting rules and regulations." This testimony is impermissible and attempts to usurp the function of the jury. Therefore, it should not be permitted.

Under FRE 702, the relevancy of the testimony depends upon whether it can properly be applied to assist the trier of fact to decide facts in issue. *See* Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 592-93 (1993). Such evidence is not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury. *See* Nichols v. American National Ins. Co., 154 F.3d 875, 883 (8th Cir.1998); United States v. Call, 129 F.3d 1402, 1406 (10th Cir.1997), *cert. denied,* 524 U.S. 906 (1998); Pelster v. Ray, 987 F.2d 514, 526 (8th Cir.1993).  Thus, in determining whether an expert should be used, the court should evaluate whether an untrained layman would be qualified to determine intelligently and to the best possible

degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute. Fed.R.Evid. 702 Advisory Committee Notes.  In this case, the prescriptions of the Truth in Negotiations Act and its implementing regulations are very clear:  the contractor and the subcontractor must provide accurate, current and complete pricing data.  No expert testimony is needed to explain those terms.

Similarly, where an expert attempts to opine on inferences that are typically for the jury to draw from the admissible evidence before it, and instructs the jury on how to weigh that evidence, it is impermissible under FRE 702 and Daubert. Nichols, 154 F.3d at 883.  As the Nichols court appropriately warned, "because '[e]xpert evidence can be both powerful and quite misleading,' a trial court must take special care to weigh the risk of unfair prejudice against the probative value of the evidence under Fed.R.Evid. 403." Nichols 154 F.3d at 884, *citing* Daubert, 509 U.S. at 595.

Additionally, testimony which articulates and applies the relevant law circumvents the fact-finder's decision making process by dictating how to decide the case or what result to reach. Smith, 794 F. Supp. at 1044, *citing* Specht v. Jensen, 853 F.2d 805, 808-09 (10th Cir.1988), *cert. denied,* 488 U.S. 1008 (1989).  Although an expert can couch testimony in legal terms to aid the fact-finder in understanding facts in evidence, he or she cannot set forth legal conclusions. Id.  This is especially true where the purported expert does not even have an accurate understanding of the applicable legal standards involved. Collier, 113 F. Supp. 2d at 1246.  For example, Mr. Oyer opines that the contract between DSMI and the IRS was a fixed price contract, which is untrue.  The contract was a Time and Materials contract, which is governed by different pricing rules.  And, Mr. Oyer has absolutely no expertise in the area of what makes a contractor liable for a false claim under the False Claims Act, even if his opinions about the contract were correct.  For example, he states that the government may only

exercise the defective pricing clause against a prime contractor, which is also incorrect under the False Claims Act. An experts opinion that the defendant was in compliance with government contract rules and regulations is just the sort of legal opinion that the courts have excluded. United States v. Barsanti, 943 F.2d 428 (4th Cir. 1991).

**C.  Mr. Oyer's Testimony Is Irrelevant to The Issue In This Case.**

The government's theory in this case is that the defendants are liable under the False Claims Act for failing to make statutorily required disclosure of the costs of the hinge repair kits they provided to the Internal Revenue Service. The Truth in Negotiations Act and implementing regulations do not include an exemption for "reasonable costs." Instead, the Act requires both prime and subcontractors to provide accurate, current and complete cost data. The defendant's after the fact assertion that the costs are reasonable is irrelevant toFalse Claims Act liability. See Singer v. United States, 217 Ct. Cl. 225 (Ct. Cl. 1978); Lockheed Air Craft Corp. V. United States, 202 Ct. Cl. 787 (1973).

**IV.   CONCLUSION**

For the reasons set forth above, it is respectfully urged that the motion to strike and/or limit the testimony of Darrell Oyer should be granted, and his testimony should be limited in the manner described above. Alternatively, if the Court does not grant the motion, the government seeks an

opportunity to: (1) depose Mr. Oyer before trial; and (2) name an expert witness in rebuttal

    Respectfully submitted,

    Rod J. Rosenstein
    United States Attorney


    _____
    Jamie M. Bennett
    Assistant United States Attorney
    Trial Bar No. 08468
    6625 United States Courthouse
    101 West Lombard Street
    Baltimore, Maryland 21201