UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERCA** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Case No. WMN-02-754 |
| | : | |
| **JOHN RACHEL, et al.** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE**

Defendants John Rachel, *et al.*, seek an order precluding plaintiff the United States from attempting to amend their complaint just weeks before trial by raising contentions of violations of the Truth in Negotiations Act, 41 U.S.C. § 254b ("TINA"), and the portion of the TINA-required Federal Acquisition Regulation incorporated into the contract between the Government and a non-party, Diez Management Systems, Inc. (DMSI) (FAR 52.215-22 and FAR 52.215-24). The Government failed to sue under this statute, failed to provided discovery regarding this new contention, and has raised it for the first time in its own Motion in Limine concerning the testimony of expert Darrell Oyer.[1]  We ask that any evidence or argument about TINA be excluded from this case.

**FACTS**

1. The Government brought this action in March 2002, alleging violations of the False Claims Act, 31 U.S.C. § 3729 (Counts 1-3),  common law fraud (Count 4),  negligent misrepresentation (Count 5), breach of contract (Count 6), payment under mistake of fact (Count 7), and unjust enrichment (Count 8).  The gist of the Government's allegations is that defendants

---

[1]  The Government also has provided counsel with a draft proposed pretrial statement, much of which is focused on the allegations of Truth in Negotiations Act violations.

1

misrepresented themselves and breached a contract by marking up the price of a laptop hinge repair kit they sold to DMSI which, in turn, sold it to the Government.  Specifically, the Government alleges that "according to the FAR and the terms of the [DMSI]Contract, DMSI and RGI were required to charge the government for labor at a specified hourly rate for each labor category used on the Contract.  Materials were required to be charged at cost."  Complaint at ¶ 13.  Defendants, however (but not DMSI), according to the Government, marked up a $23 hinge to $128, Complaint at ¶ 20, and thus "illegal[ly] and fraudulent[ly] inflated costs."  Complaint at ¶ 22.

    2.  Defendants conducted discovery concerning these allegations, including interrogatories, document requests, admissions, and depositions.

    3.  Among the interrogatories served was question 3, which asked the following:

> Identify each specific provision in every contract that you contend limits any defendant's right to markup the product.

The Government's answer to question 3 was as follows:

> Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, the United States of America hereby refers the defendants to the documents produced pursuant to the Response to Request for Production for such additional information as may be derived or ascertained from such records as easily by the Defendants as by the United States.
>
> Section B of the Solicitation, Offer and Award states:
>
>> [I]n accordance with FAR 16.601, Time and Material Contract this Contract provides for direct labor hours at fixed hourly rates and materials at cost…
>>    The contractor will be reimbursed based upon fixed hourly rates….Materials will be reimbursed at cost, including material handling costs.  Depot Maintenance based on fixed hourly rates…Materials will be reimbursed at cost, including materials handling costs.
>
> In addition, in the Teaming Agreement it states that "the Subcontractor further agrees to submit to the Prime Contractor a cost proposal…consistent with the cost

principles and other applicable requirements of Government procurement regulations.

4. The Government never supplemented its response to Interrogatory 3 for the past 5 years, and never identified any specific documents containing any more detailed response. The Government also has never sued DMSI.

5. Recently, in moving "to strike and/or limit" the testimony of expert Darrell Oyer, the Government contended that "in this case, the prescriptions of the Truth in Negotiations Act and its implementing regulations are very clear: The contractor and the subcontractor must provide accurate, current and complete pricing data" and that "the Truth in Negotiations Act and implementing regulations do not include an exemption for 'reasonable costs.' Instead, the Act requires both prime and subcontractors to provide accurate, current and complete cost data." Government Memorandum in Support of Motion to Strike and/or Limit Expert Testimony of Darrell J. Oyer at pp. 6 and 7.

6. It is clear that the Government now is intending to pursue a claim against defendants under TINA, for the first time.

## ARGUMENT

The Truth in Negotiations Act,[2] which the Government is raising now for the first time, and the False Claims Act (FCA),[3] pursuant to which the Government brought suit here, are two entirely different statutes. An allegation of a violation of one does not encompass a violation of the other. This Court can look at Government complaints since these statutes were enacted, and it will see that the Government sometimes sues under one of these statutes, sometimes under the

---

[2] TINA is set forth twice in the statutes. In volume 10 of the United States Code (10 USC § 2306a), TINA is made applicable to Defense agencies. In volume 41 of the United States Code (41 USC 21 254b), civilian agencies are included. Both provisions are substantially identical, though most litigation occurs with the Defense agencies, so most cases cite that provision.

[3] 31 U.S.C. § 3729

other, and sometimes under both, but the Government NEVER has claimed that an allegation under the FCA is an allegation under TINA – that is, until a few days ago in this case.

The difference between the FCA and TINA is basic, and is understood by anyone who is involved in government contracting matters.  Whereas the FCA addresses allegations of fraudulent claims for payment of money, which is what the Government alleges in its complaint in this matter, TINA addresses false cost information provided during price negotiations.  These are two completely different concepts.  Indeed, when TINA was first enacted, one of the first courts to address it discussed its impact on the FCA, explaining that the two statutes address different concerns, because "inflated cost estimates are quite different from fraudulent estimates":

> The last boiler invoice payment was made on March 23, 1960.  Two years later Congress passed the Truth-In-Negotiation Act, 10 U.S.C. § 2306(f) (1962).  FW argues that this Act must have withdrawn from the False Claims Act "claims based upon the use of inflated cost estimates." Again the premise is faulty.  Inflated cost estimates are quite different from fraudulent estimates. Although the Truth-In-Negotiation Act was not in effect at the time of the negotiation of the contract and the payments thereunder, there was a clause in the contract subjecting it to "any subsequent Act of Congress providing for the renegotiating of contracts." Whether this clause would render the Truth-In-Negotiation Act retroactively applicable to this contract is irrelevant because in our opinion that Act does not supersede the False Claims Act. There is no inconsistency between an Act which deals with fraud and one which deals with data which are "inaccurate, incomplete or non-current." § 2306(f) (4).

*United States v. Foster-Wheeler Corp.*, 447 F.2d 100 (2d Cir. 1971)

Furthermore, TINA is implemented by the Federal Acquisition Regulation in a completely different way than FCA.[4]  At the time at issue here, the TINA FAR provisions were

---

[4] The Federal acquisition process is established in the Federal Acquisition Regulation (FAR) which are published as part of Title 48 of the Code of Federal Regulation.  "The Federal Acquisition Regulations System is established for the codification and publication of uniform policies and procedures for acquisition by all executive agencies." FAR  1.101.  The FAR provides guidance to executive agencies, as opposed to non-government entities, on how conduct acquisitions under prime contracts, defined as "…a contract or contractual action entered into by the United States…" FAR  3.502-1.

4

set forth at FAR 15.804 *et seq*. FAR Part 15.804 (as it then existed) *inter alia* required certain contract provisions to be placed in prime contracts with the United States.[5] The prime contract between Diez Management Systems, Inc. (DMSI) and the Government contains two TINA contract provisions, FAR 52.215-22 and 52.215-24.[6]

FAR 52.215-24 entitled "Subcontractor Cost or Pricing Data" requires that "before awarding any subcontract[7] expected to exceed $100,000 when entered into . . . the Contractor shall require the subcontractor to submit cost or pricing data . . . unless the price is (1) based don adequate price competition; (2) based on established catalogue or market prices of commercial items . . .. or (3) set by law or regulation . . .."

FAR 52.215-22, entitled "Price Reduction for Defective Cost or Pricing Data" provides that "(a) If any price, including profit or fee, negotiated in connection with this contract, or any cost reimbursable under *this contract,* was increased by any significant amount because —(1) The Contractor or a subcontractor furnished cost or pricing data that were not complete, accurate, and current as certified in its Certificate of Current Cost or Pricing Data; (2) A subcontractor or prospective subcontractor furnished the Contractor cost or pricing data that were not complete, accurate, and current as certified in the Contractor's Certificate of Current Cost or Pricing Data…the price or cost shall be reduced accordingly…" FAR 52.215-22 (emphasis added).

---

[5] The definition of a prime contract in FAR includes the United States (U.S.) government as one of the parties to the contract. Specifically, FAR provides guidance to executive agencies, as opposed to non-government entities, on how conduct acquisitions under prime contracts, defined as "…a contract or contractual action entered into by the United States…" FAR 3.502-1. In advising a Contracting Officer on the formulation of a prime contract, the FAR directs "…The contracting officer shall include in this section [of the contract] the clauses required by law or by this part and any additional clauses expected to be included in any resulting contract…" FAR 15.204-3. The FAR contains over five hundred contract clauses for the Contracting Officer to consider in the formation of a prime contract. These clauses are contained in FAR Subpart 52.2.

[6] Today, the TINA rules are in FAR Part 15.4. They do not materially differ with respect to the matters cited in this Brief.

[7] FAR defines a subcontract as "**…**a contract or contractual action entered into by a prime contractor or subcontractor ..." FAR 3.502-1. The U.S. government is not a party to a subcontract. In fact, the FAR and government practice is to insist that "…Government representatives —(1) Must recognize the lack of privity of contract between the Government and subcontractors…" FAR 42.505 (b).

Note that even when a subcontractor inflates its costs estimates to the prime contractor, *it is the prime contract price* (*i.e., "this contract"*) that is adjusted under TINA and its regulations as that is the only privity relationship which involves the Government. If the Government pursues a TINA claim against a prime contractor, the prime contractor and subcontractor are left to sort out any subcontract price adjustments between them. As explained by the first court to address this matter:

> We feel it is important to note, at this juncture, that this case is the product of a demand made by the Government upon Lockheed, as a result of alleged overstatements in price made by its subcontractor, Midwestern. Although this is a case of first impression, insofar as the issue of subcontractor overstatements are concerned, this court has had occasion previously to consider P.L. 87-653, the Defective Pricing Statute, and the clause adopted pursuant to it, in *Cutler-Hammer, Inc., supra*. In that case we held, in part, that the prime contractor was under an obligation to furnish information concerning costs. We stated:
>
>> Public Law 87-653 was intended to apply to situations where the data supplied was incomplete, inaccurate, or noncurrent. It was aimed at cases where costs were known, but information about them was withheld. The statute (and the contract clause which is utilized pursuant to the statute) speaks in terms of "Defective Pricing." If a cost is known when the contract price is being negotiated, it must be furnished accurately, completely, and on a current-price basis. If the contractor purchases components from a subcontractor, these costs are also subject to the Defective Pricing Clause. 189 Ct. Cl. at 84, 416 F. 2d at 1311.

*Lockheed Aircraft Corp., Lockheed--Georgia Co. Div. v. United States*, 193 Ct. Cl. 86, 92 (Ct. Cl. 1970). Thus, since *Lockheed Aircraft Corp., Lockheed--Georgia Co. Div. v. United States*, it is a basic principle of government contract practice that only the prime contractor is liable to the Government under TINA. As explained by one Board of Contract Appeals:[8]

> Where defective cost or pricing data of a subcontractor are reflected in a prime contractor's negotiated price, the defective pricing clause in the contract between the Government and the prime contractor allows the Government to reduce the prime contract price by the amount of overstatement resulting from the

---

[8] Boards of Contract Appeal have jurisdiction over TINA matters in the first instance, under the Contract Disputes Act, 41 USC § 601 *et seq*.

6

>   subcontractor's defective data. *Lockheed Air Corp., Lockheed-Ga. Co. Div. v. United States*, 432 F.2d 801 (Ct. Cl. 1970).

*McDonnell Douglas Helicopter Systems,* 99-2 B.C.A. (CCH) P30,546 (ASBCA 1999). Thus, as has been explained time and again, it is only the *prime* contractor that is liable to the Government under TINA:

>   A prime contractor is liable to the Government for defective cost or pricing data under the "Price Reduction for Defective Cost or Pricing Data" clause, General Dynamics Corp., ASBCA No. 39866, 94-1 BCA P26,339 at 131,009, which expressly provides that, "if any price . . . negotiated in connection with this contract . . . was increased by any significant amount because . . . a subcontractor or prospective subcontractor furnished the Contractor cost or pricing data that were not complete, accurate, and current as certified in the Contractor's Certificate . . . the price or cost shall be reduced accordingly and the [prime] contract shall be modified to reflect the reduction." The language of the prime contract therefore indicates that, if a subcontractor's defective data cause an increase in the price (including indirect cost and profit markups) of the contract, the prime contractor is liable to the Government to the extent defective pricing is shown regardless of whether the subcontractor's defective pricing occurred prior to or after prime and Government agreement upon price. FAR 15.804-7(b) and (e); 52.215-22(a).

*McDonnell Aircraft Company,* 97-1 B.C.A. (CCH) P28,977 (ASBCA 1997). The prime contractor's TINA liability is established based on the subcontractor's TINA violations *even if the prime contractor is completely innocent:*

>   Even where it appears that the prime contractor is not at fault, the prime contractor is responsible to the Government for the impact upon the prime contract of the subcontractor defective data. Lockheed Aircraft Corporation v. United States, 193 Ct. Cl. 86, 432 F.2d 801 (1971).

*General Dynamics Corp.,* 94-1 B.C.A. (CCH) P26,339 (ASBCA 1993).

Here, the Government has NEVER made a TINA claim. We have not been permitted an opportunity to test this claim. We have not been permitted any discovery concerning this claim. We have not been permitted any chance to probe its validity. Allowing amendment of a complaint to assert such a claim 5 ½ years after the Government filed the complaint and on the eve of trial where the prejudice to defendants is so obviously palpable is plainly improper. *E.g.,*

7

*PSG Co. v Merrill Lynch, Pierce, Fenner & Smith, Inc*. 417 F2d 659 (9th Cir. 1969), *cert den* 397 US 918 (1970).  Clearly, if an amendment cannot be allowed, argument about an irrelevant TINA issue should not be allowed in this case.

Moreover, any TINA claim here would be futile.  The Government would need to assert it against DMSI, and DMSI is not a party here.  Indeed, any claim now against DMSI about what occurred 12 years ago (this litigation concerns alleged FCA violations in 1995) would be barred by the statute of limitations, in any event.  For this reason alone, this amendment should be denied and this argument eliminated from this case.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383 (10th Cir. 1980)

Further, the Government provided a sworn interrogatory response affirming that it was not making any claim under the TINA provisions of the contract.  The Government identified the provisions at issue, and TINA was not one of them.  It is now bound by that response.  Indeed, it is axiomatic that parties are "bound by their responses to . . . interrogatories" and cannot introduce evidence inconsistent therewith.  *Adkins v. Crown Auto, Inc.*, 2005 U.S. Dist. LEXIS 45207 (D. Va. 2005) (granting motion in limine on this ground).

Finally, and most importantly, a TINA claim as a matter of law lies against the prime contractor – here DMSI.  The Government has no privity of contract with any defendant and cannot assert a TINA claim against the defendants.  *General Dynamics Corp. supra.*[9]  Therefore, as a matter of law, the Government's new TINA assertion is completely absurd and cannot be part of this case.

---

[9] We note that if the Government is permitted to assert this claim which perforce must be against DMSI, undersigned counsel may need to withdraw for ethical reasons.  While we have not analyzed this matter carefully, undersigned counsel has represented DMSI in the past, and may be in a conflict situation.

## CONCLUSION

For the foregoing reasons, the Government should be barred from pursuing any TINA claims in this matter against defendants.

Respectfully submitted,

S/Edward J. Tolchin
Edward J. Tolchin
Fettmann, Tolchin, & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
703-385-9500
703-385-9893 (facsimile)
etolchin@ftm-pc.com

### Certificate of Service

I hereby certify on this 2d day of October 2007, the foregoing Defendants' Memorandum in Support of Motion in Limine was served via electronic filing with the Court to those persons receiving ECF notice.

S/Edward J. Tolchin
Edward J. Tolchin