UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERCA : | |
| Plaintiff : | |
| : | |
| v. : | Case No. WMN-02-754 |
| : | |
| JOHN RACHEL, et al. : | |
| : | |
| Defendants. : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AND/OR LIMIT EXPERT TESTIMONY BY DARRELL J. OYER**

As noted in the Plaintiff's Motion in Limine, the Defendants have designated Darrell J. Oyer as their expert in this matter. Mr. Oyer, a government contracts and accounting expert, will testify regarding the matters at issue here. The Government seeks to exclude Mr. Oyer's testimony, arguing that his opinions were not timely disclosed pursuant to Fed. R. Civ. Proc. 26(a)(2), and that Mr. Oyer's testimony would be inappropriate and irrelevant. As discussed below, the Plaintiff's motion is without merit.

**FACTUAL HISTORY**

The Government's "Factual History" is remarkable for what it omits. Specifically, the Government neglects to mention that, subsequent to remand from the Fourth Circuit, the Court issued an Amended Scheduling Order on March 6, 2007 (Document 60). The Amended Scheduling Order (not an amendment to the prior scheduling order, but an *Amended* Scheduling Order) replaced the scheduling order cited by the Government in its Memorandum. This Amended Scheduling Order thereafter controlled the proceedings in this matter.

**A.     Defendants complied with Fed. R. Civ. Proc. 26**

The Government suggests that the Defendants' expert disclosure is untimely under Fed. R. Civ. Proc. 26(a)(2), and thus not permitted to be used under Fed. R. Civ. Proc. 37.  The premise of the Government's argument, of course, is incorrect.  Under the Amended Scheduling Order entered on March 6, 2007, issued after the case was remanded following appeal, no deadline is set for expert disclosure.  Accordingly, pursuant to the Federal Rules of Civil Procedure, any expert "disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial . . . ."  Fed. R. Civ. Proc. 26(a)(2)(C).  The trial in this case is set for October 29, 2007.  The Defendants' Rule 26(a)(2) disclosure was made on July 31, 2007, which is 90 days prior to trial, as required by Rule 26(a)(2)(C).  Accordingly, the disclosures are timely.

It defies logic, and good faith, for the Government to contend that a pre-remand scheduling order still has a binding effect after remand and the Court's issuance of a new scheduling order.  It is axiomatic that (a) upon a remand a "district court will undoubtedly enter a new scheduling order," *Olsen v. E.F. Hutton & Co.*, 957 F.2d 622, 629 (8th Cir. 1992); (b) a previously issued "scheduling order is moot" after a remand, *Gordon Duff Culwell and William Patrick Conrad v. City Of Fort Worth*, 468 F.3d 868, 872 (5th Cir. 2006); and (c) a party must comply with a scheduling order issued after remand, not a scheduling order issued before remand.  *Johnson v. UPS*, 236 F.R.D. 376, 378 (E.D. Tenn. 2006) ("plaintiffs also argue Defendant did not submit any discovery requests during the new discovery period set out in the scheduling order entered after this case was remanded").

Moreover, even if defendants were required to comply with a pre-remand scheduling order which no longer was extant, a circumstance that indeed defies logic, striking an expert designation under Rule 37 would still be impermissible if the "failure" to adhere to the non-existent deadline was "harmless." Fed. R. Civ. P. 37(c). Here, there was no prejudice to the Government and, therefore, there was no harm.

In this regard, nowhere in its Motion does the Government claim any prejudice. And, there could not be any prejudice because, under Rule 26, initial disclosures are made 90 days before the trial date, but rebuttal disclosures may be "within 30 days after the disclosure made by the other party." Fed. R. Civ. Proc. 26(a)(2)(C). Thus, the Government had ample opportunity to depose defendants' expert and to identify its own expert, so that any ersatz failure by RGI to adhere to a non-extant and moot prior scheduling order was clearly harmless. The Government chose not to take advantage of its rights, of course, and instead waited two months to file its motion to strike.[1]

Moreover, defendants would clearly be prejudiced by any order excluding their expert witness. Prior to remand, no expert was deemed necessary because both sides viewed the issues as subject to a ruling as a matter of law. It is only post-remand, when the Fourth Circuit ruled that summary judgment was inappropriate, that experts became relevant. Thus, defendants prejudice in not being permitted to identify experts post-remand is palpable. But, the Government suffers no prejudice by permitting the expert testimony.

---

[1] Sometime in August 2007, Government counsel advised undersigned counsel in a telephone call that the Government was going to identify a counter expert, and asked if we would consent to a brief extension of the 30 day deadline. Undersigned counsel agreed, but then heard nothing until receipt of the Government's Motion to Strike and/or Limit. We only can assume that the expert that the Government sought to identify supported Mr. Oyer's testimony.

3

### 2. Mr. Oyer's Testimony is Plainly Proper under the Federal Rules of Evidence

The Government also suggests that Mr. Oyer's testimony must be excluded because "he will testify about the ultimate legal issue in this case." That statement is untrue, but even if true, this fact does not warrant the exclusion of Mr. Oyer's testimony. Under the Federal Rules of Evidence, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a).[2]

Moreover, binding precedent in this matter requires that Mr. Oyer's testimony be admitted. As the Government relates, Mr. Oyer will testify regarding "the government acquisition process applicable in this contracting circumstance and RGI's compliance with applicable government contracting rules and regulations;" and "the 'reasonableness' of the cost 'estimating' process and price for the item at issue in this matter (the hinge repair kit)." Government Brief at p. 2.

Rule 702 provides that expert testimony is appropriate "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Thus, it is well established in this Circuit that "the subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend. If, again in the disjunctive, the proposed testimony will recount or

---

[2] This rule applies except with regard to an "expert witness testifying with respect to the mental state or condition of a defendant in a criminal case." See Fed. R. Evid. 704(b).

4

employ 'scientific, technical, or other specialized knowledge,' it is a proper subject." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993).

The Government says that Mr. Oyer's testimony won't be helpful to the jury because the "prescriptions of the Truth in Negotiations Act and its implementing regulations are very clear: the contractor and the subcontractor must provide accurate, current and complete pricing data" and the jury needs no help in understanding them. Government Brief at p. 6. The "Truth in Negotiations Act and its implementing regulations" are not even part of this case.[3] But even were the Government permitted to amend their pleadings just three weeks prior to trial to include a never previously raised Truth in Negotiations Act (TINA) claim, the Government provides no facts to support its conclusory statement that no expert is needed to explain the terms of TINA and its regulations.[4] Let us dissect this issue briefly.

---

[3] This matter is addressed in defendants' Motion in Limine filed October 2, 2007 (Paper 70).

[4] The Government attempts to support its conclusory statement only by unfocused citations to some cases, none of which is even remotely related to the matters at hand. *Nichols v, Amercan National Insurance Company,* 154 F.3d 875 (8th Cir. 1998) involves a civil rights matter, in which an expert testimony concerned the "psychiatric credibility" of a party. *United States v. Call*, 129 F.3d 1402 (10th Cir. 1997), concerns expert testimony regarding the results of a polygraph examination. *Peltser v. Ray,* 987 F.2d 514 (8ty Cir. 1993), concerned testimony as to whether odometers had been "rolled back."

TINA is a disclosure statute[5] requiring a contractor to submit to the Government and to certify "cost or pricing data" prior to the award of any negotiated contract where the contract price is expected to exceed $ 500,000, and requires that the contract contain a provision providing for contract price adjustment in the event the contract price is increased due to the submission of data that was inaccurate, incomplete or noncurrent.[6] The definition of cost or pricing data found in 10 U.S.C. § 2306a(h) states that the term

---

[5]  As noted in our pending motion in limine, the U.S. Government only has privity with one entity, the prime contractor. Thus, if a TINA violation occurs at the subcontractor level, the Government's defective pricing action must proceed against the prime contractor (here, DMSI, which is not a party) and the prime contractor must proceed against the subcontractor, even if the prime contractor is wholly innocent.  As explained by one commentator:

> It is axiomatic that the Federal Government, with rare exceptions, accepts no privity with suppliers of goods and services to its prime contractors. The relationship between a prime contractor and its suppliers in the first instance is one of private contract. All other things being equal, the prime and its supplier would be free to write their own governing law. Contracts are merely private law fashioned by the parties and enforceable by the state, subject to certain limitations of public policy.  And this model still holds true in many respects in the relationship between government prime contractors and their suppliers.
>
> An example of a situation in which the parties remain free to fashion their own "law" is the Truth in Negotiations Act (TINA). TINA provides that the "head of an agency shall require" that "an offeror for a subcontract (at any tier)" or a modification thereof must provide certified cost or pricing data if (1) "the prime contractor and each higher-tier subcontractor" are required to submit cost or pricing data and (2) the subcontract exceeds a set dollar amount (currently $ 550,000). 10 U.S.C. § 2306a(a)(1)(C) (2000). The heads of agencies implement this directive by a contract clause requiring prime contractors to pass the requirement on to subcontractors. Prime contractors do so by including the requirement in a subcontract provision, and any subsequent government defective pricing case based on subcontract data is brought against the prime contractor. *See Cutler-Hammer Inc. v. United States*, 416 F.2d 1306, 1311 (Ct. Cl. 1969); *Lockheed Aircraft Corp., Lockheed-Georgia Company Division v. United States*, 432 F.2d 801, 805-06 (Ct. Cl. 1970); *McDonnell Aircraft C*o., ASBCA No. 44504, 97-1 BCA P28,977, at 144,314. If a prime contractor omits to include such a clause in the subcontract, it follows that the onus of a "violation" by the subcontractor--putative defective pricing--falls on the prime contractor without recourse to the subcontractor. *See* 10 U.S.C. § 2306a(e)(i)(A) (2000). The subcontractor in such a situation has not committed "defective pricing" because it is under no independent statutory or regulatory obligation to follow TINA or the FAR clauses implementing it.

Richard Johnson, *Identifying "Subcontractors" Under TINA and Access-To-Records Statutes: Filling an Annoying Gap in Government Contracts Jurisprudenc*e, 32 Pub. Cont. L.J. 739 (2003) (footnotes omitted).

[6]  TINA does not have a multiple damages clause, such as does the False Claims Act, which is the statute at issue in the Government's complaint in this matter.

does not include judgmental information, but does include the factual information upon which a judgment is based.

Cost or pricing data, of course, is an *accounting* term of art. What, for example, does data mean? What is the difference between cost data and pricing data? Only an accountant can explain these terms to the jury. Moreover, because the defective pricing clause is restricted to factual and verifiable data, it cannot cover data that are speculative in nature or that represent an estimate or judgment. What is considered to be factual may vary from case to case and is frequently unclear. For instance, if an estimate can be checked and kept current by verifiable, factual data in the contractor's possession, such as running trial balances which closely approximate actuality, a failure to furnish those data may result in an inaccurate certification. *Appeal of Lambert Engineering Co.*, ASBCA 13338, 69-1 BCA 7663 (1963). However, a labor rate, which was projective in nature and which was overstated, cannot be made the basis for a price reduction under this clause. *Appeal of Lockheed Aircraft Corp.*, ASBCA 10453, 67-1 BCA 6356 (1967). Clearly, no jury will be able to understand these esoteric accounting issues without an expert accountant.

Furthermore, Federal Acquisition Regulation Part 31 is a key accounting guideline which any Government auditor must use in the course of performing contract audits. In assessing whether a particular cost is allowable, the auditor will determine whether the cost is allowable under FAR Part 31; reasonable; allocable to the contract in question; in accordance with the Cost Accounting Standards, if applicable; and consistent with the specific terms of the contract. These audit determinations can involve close

questions and large amounts of money, and can only be interpreted and applied by competent accounting counsel.

According to the Government, Mr. Oyer will testify about "legal conclusions." Government Brief at p. 6. Mr. Oyer will address accounting and government contracts issues, not legal conclusions. But even if he would do so, it is well settled in this Circuit that "'in some circumstances, opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible.' *Weinstein's Federal Evidence § 704.04[2][a]* (2d ed. 2001) ('For example, the testimony may be helpful if the case involves a specialized industry such as insurance.') (citing *Peckham v. Continental Casualty Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990)). *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).

As to the Government's contention that Mr. Oyer states that "the contract between DSMI [sic] and the IRS was a fixed price contract . . .," Government Brief at p. 6, this is a Government misrepresentation. Nowhere does Mr. Oyer make that statement. As to the Government's next contention that Mr. Oyer is not an expert in the False Claims Act., *id*., that is also a misrepresentation. Mr. Oyer spent 20 years as a *Government* auditor, retiring as the Government's Assistant Director of DCAA, the Government-wide auditing arm of the United States Government, which regularly audits FCA issues. *See* Oyer Report at p. 9 (attached to Government Brief). As to the Government's contention that Mr. Oyer somehow is remiss because he says that the Government "may only exercise the defective pricing clause against a prime contractor, which is also incorrect under the False Claims Act," Government Brief at pp. 6-7, this is Orwellian doublespeak of the worst kind. As the Government is well aware, claims by the Government under TINA

may only be brought by the Government against its prime contractor (here DMSI, which is not a party to this litigation).[7] The Government may bring claims under the False Claims Act directly against subcontractors. But a violation of TINA is unrelated to the FCA, and the difference in the enforcement requirements of these two distinct statutes is one of many reasons why a Government complaint asserting an FCA claim can't be morphed into a TINA claim a few weeks prior to trial!

Finally, we note that the Government's citation to *United States v. Bersanti*, 943 F.2d 428 (4th Cir. 1991), proves our points above. There, in an FCA case, the Court would not permit an expert to testify as to what was accurate or inaccurate in a claim alleged to be false, but ruled that both a Government and defendant's expert properly could testify as to the meaning of terms of art in a contract that underlay the litigation and upon which the alleged falsity was based. *Id.*, 943 F.2d at 433. That type of testimony is precisely what Mr. Oyer will offer here.

3.  **Mr. Oyer's Testimony is Relevant**

The Government finally argues that Mr. Oyer's testimony about costs is irrelevant because the Government's case is about an allegation that "defendants are liable under the False Claims Act for failing to make a statutory required disclosure of the costs of the hinge repair kits they provided to the Internal Revenue Service. The Truth in Negotiations Act and implementing regulations does not include an exemption for "'reasonable costs.'" Government Brief at p. 7. Aside from the fact that this Government Brief is the first time that the Government raises this TINA claim, it is the Government rendition of TINA which is really the false claim here.

---

[7] This matter is addressed in defendants' Motion in Limine filed October 2, 2007 (Paper 70). *See* also footnote 5 *supra.*

Fed. R. Evid. 401 provides that "relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Even if the Court permits the Government to assert a TINA claim which it never asserted in its complaint and never disclosed in discovery, "reasonable costs" is always at issue under TINA because one of the elements of a TINA claim is reliance by the Government on the allegedly false cost and pricing data, which is unlikely if the missing information would not have changed an otherwise reasonable cost or price:

> In this case ASBCA originally found no reliance by the government on the nondisclosure of Universal's actual overhead rate. The majority noted that Universal was the only source available to perform the original emergency repair work; that it would have been impracticable to allow another contractor to perform any of the contract work; that Universal's prices were found by the government to be fair and reasonable; that Universal would accept nothing less than its established overhead markup; and that the government made no attempt to negotiate with Universal for a reduction in any part of its proposals. 82-1 BCA at 77,995-997. From these findings, the majority (Norman, Williams, and Andrews, JJ.) concluded "that the contracting officers involved did not rely on [Universal's] pricing data and, thus, were not misled by [Universal's] failure to disclose its actual overhead rate." Id. at 77,998.

*Universal Restoration, Inc. v. United States*, 798 F.2d 1400 (Fed. Cir. 1986).

Plainly, the Government's lack of candor in explaining TINA suggests that it is the Government that is attempting to hide relevant information from the Court.

**Conclusion**

It is baseless for the Government to argue that Mr. Oyer's testimony is late, improper, or irrelevant. The Government's motion should be denied.

Respectfully submitted,

S/Edward J. Tolchin
Edward J. Tolchin
Fettmann, Tolchin, & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
703-385-9500
703-385-9893 (facsimile)
etolchin@ftm-pc.com

**Certificate of Service**

I hereby certify on this 9th day of October 2007, the foregoing Defendants' Memorandum in Opposition to Plaintiff's Motion To Strike And/Or Limit Expert Testimony By Darrell J. Oyer was served via electronic filing with the Court to those persons receiving ECF notice.

S/Edward J. Tolchin
Edward J. Tolchin