UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERCA** | : | |
| **Plaintiff** | : | |
| v. | : | Case No. WMN-02-754 |
| **JOHN RACHEL, et al.** | : | |
| **Defendants.** | : | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO RESTRICT REFERENCES TO THE TRUTH IN NEGOTIATIONS ACT**

The Government's "Response" (paper 71) once again confuses liability under the Truth in Negotiations Act ("TINA") and liability under the False Claims Act ("FCA"). To be sure, it is theoretically possible for a contractor to both violate TINA and the FCA, and it is even theoretically possible that a contractor's violation of TINA can lead to an FCA false claim. But, only a contractor, *and not a subcontractor,* can owe a duty to the Government under TINA. If a subcontractor provides inaccurate cost and pricing data to its prime contractor, the prime contractor is liable to the Government under TINA for the subcontractor's mistake, whether or not the contractor knew about the subcontractor's mistake. If the prime contractor included a TINA clause in its subcontract with the subcontractor (which is not the case here), then the subcontractor may owe a duty to the prime contractor pursuant to which the prime contractor could sue the subcontractor if the prime contractor is made to pay the Government for the sin of the subcontractor. This matter cannot possibly be challenged by the Government – it wrote the TINA statute and regulations, and can't avoid its own handiwork.

The statutory TINA system works this way because it establishes a contract duty by Government design, and the Government only has privity with one entity, the prime contractor. Thus, if a TINA non-disclosure occurs at the subcontractor level, the duty concerning it is owed by the prime contractor (here, DMSI, which is not a party) to the Government, and if the prime contractor must pay the Government, the prime contractor must then proceed against the subcontractor, here RGI, even if the prime contractor is wholly innocent. Of course, if the prime contractor has failed to include a TINA clause in a subcontract with its subcontractor (which is the case here: there is no subcontract between DMSI and RGI), the prime contractor may be out of luck because the subcontractor's duty to the prime contractor can arise solely from the existence of the clause in its subcontract. As explained by one commentator:

> It is axiomatic that the Federal Government, with rare exceptions, accepts no privity with suppliers of goods and services to its prime contractors. The relationship between a prime contractor and its suppliers in the first instance is one of private contract. All other things being equal, the prime and its supplier would be free to write their own governing law. Contracts are merely private law fashioned by the parties and enforceable by the state, subject to certain limitations of public policy. And this model still holds true in many respects in the relationship between government prime contractors and their suppliers.
>
> An example of a situation in which the parties remain free to fashion their own "law" is the Truth in Negotiations Act (TINA). TINA provides that the "head of an agency shall require" that "an offeror for a subcontract (at any tier)" or a modification thereof must provide certified cost or pricing data if (1) "the prime contractor and each higher-tier subcontractor" are required to submit cost or pricing data and (2) the subcontract exceeds a set dollar amount (currently $ 550,000). 10 U.S.C. § 2306a(a)(1)(C) (2000). The heads of agencies implement this directive by a contract clause requiring prime contractors to pass the requirement on to subcontractors. Prime contractors do so by including the requirement in a subcontract provision, and any subsequent government defective pricing case based on subcontract data is brought against the prime contractor. *See Cutler-Hammer Inc. v. United States*, 416 F.2d 1306, 1311 (Ct. Cl. 1969); *Lockheed Aircraft Corp., Lockheed-Georgia Company Division v. United States*, 432 F.2d 801, 805-06 (Ct. Cl. 1970); *McDonnell Aircraft C*o., ASBCA No. 44504, 97-1 BCA P28,977, at 144,314. If a prime contractor omits to include such a clause in the subcontract, it follows that the onus of a "violation" by the subcontractor--putative defective pricing--falls on the prime contractor without recourse to the subcontractor. *See* 10 U.S.C. § 2306a(e)(i)(A) (2000). The

2

>subcontractor in such a situation has not committed "defective pricing" because it is under no independent statutory or regulatory obligation to follow TINA or the FAR clauses implementing it.

Richard Johnson, *Identifying "Subcontractors" Under TINA and Access-To-Records Statutes: Filling an Annoying Gap in Government Contracts Jurisprudence*, 32 Pub. Cont. L.J. 739 (2003) (footnotes omitted).

This matter is clear from the statute. It is clear from the regulations. It is clear from the cases. There is nothing that the Government can do to avoid its own law. As explained by the very first court to address this precise matter:

>We feel it is important to note, at this juncture, that this case is the product of a demand made by the Government upon Lockheed, as a result of alleged overstatements in price made by its subcontractor, Midwestern. Although this is a case of first impression, insofar as the issue of subcontractor overstatements are concerned, this court has had occasion previously to consider P.L. 87-653, the Defective Pricing Statute [this is TINA], and the clause adopted pursuant to it, in *Cutler-Hammer, Inc., supra*. In that case we held, in part, that the prime contractor was under an obligation to furnish information concerning costs. We stated:
>
>>Public Law 87-653 was intended to apply to situations where the data supplied was incomplete, inaccurate, or noncurrent. It was aimed at cases where costs were known, but information about them was withheld. The statute (and the contract clause which is utilized pursuant to the statute) speaks in terms of "Defective Pricing." If a cost is known when the contract price is being negotiated, it must be furnished accurately, completely, and on a current-price basis. If the contractor purchases components from a subcontractor, these costs are also subject to the Defective Pricing Clause. 189 Ct. Cl. at 84, 416 F. 2d at 1311.

*Lockheed Aircraft Corp., Lockheed--Georgia Co. Div. v. United States*, 193 Ct. Cl. 86, 92 (Ct. Cl. 1970). Thus, since *Lockheed Aircraft Corp., Lockheed--Georgia Co. Div. v. United States*, it is a basic principle of government contract practice that only the prime contractor owes a duty to the Government under TINA. As explained by one Board of Contract Appeals:[1]

---

[1] Boards of Contract Appeal have jurisdiction over TINA matters in the first instance, under the Contract Disputes Act, 41 USC § 601 *et seq*.

3

> Where defective cost or pricing data of a subcontractor are reflected in a prime contractor's negotiated price, the defective pricing clause in the contract between the Government and the prime contractor allows the Government to reduce the prime contract price by the amount of overstatement resulting from the subcontractor's defective data. *Lockheed Air Corp., Lockheed-Ga. Co. Div. v. United States*, 432 F.2d 801 (Ct. Cl. 1970).

*McDonnell Douglas Helicopter Systems,* 99-2 B.C.A. (CCH) ¶ 30,546 (ASBCA 1999). *See also McDonnell Aircraft Company,* 97-1 B.C.A. (CCH) ¶ 28,977 (ASBCA 1997). And, the prime contractor's TINA duty exists with respect to the subcontractor's actions *even if the prime contractor is completely innocent:*

> Even where it appears that the prime contractor is not at fault, the prime contractor is responsible to the Government for the impact upon the prime contract of the subcontractor defective data. *Lockheed Aircraft Corporation v. United States*, 193 Ct. Cl. 86, 432 F.2d 801 (1971).

*General Dynamics Corp.,* 94-1 B.C.A. (CCH) ¶ 26,339 (ASBCA 1993).

We cited all the foregoing law, and then some, to this Court in our motion, and the Government's "Response" fails to address any of it. The Government's silence is deafening.

We also note in passing[2] that the Government's argument on page 5 of the Government Brief is simply wrong. As noted, there is no contract executed between DMSI and RGI in which DMSI made RGI subject to TINA, though DMSI was supposed to have done so pursuant to DMSI's own contract (assuming that DMSI treated RGI as a subcontractor, which it did not). *See* FAR 52.215-24 (incorporated into DMSI contract). Thus, because of the absence of any such clause in any subcontract to which RGI was a party, RGI did not submit a Certificate of Current Cost or Pricing Data (the TINA document upon which TINA liability can be based)

---

[2] Because of the complete lack of duty of a subcontractor to the Government under TINA, the Court need not even consider any further matter about TINA, but there are numerous other reasons discussed in the text as to why TINA has no relevance to this case.

upon which DMSI could even assert a flow down[3] claim. FAR 52.215-22. Furthermore, the information which the Government is now claiming should have been on the non-existent and non-required RGI Certificate of Current Cost or Pricing Data is not cost or pricing data at all, or if it is, would *ipso facto* include the costs of warranty and guaranty which plainly justify the total costs charged by RGI. Moreover, TINA applies *only* to cost or pricing data on a Certificate of Current Cost or Pricing Data submitted at the time of price negotiation. 41 U.S.C. § 254b(a)(1)(A) (data at issue is data submitted "before the award of a contract"); 10 U.S.C. 2306(a)(1)(A) (same); FAR 52.215-22. The DMSI contract at issue was awarded on October 1, 1995, but the costs at issue were developed at the end of October through November, 1995 because the laptop hinge repair kits were not priced as part of the contract but rather were priced after the fact. Indeed, the Government tells us for the first time in the Government Brief in this matter that it is going to rely on a supposed TINA duty of RGI which arose "in March 1996" -- 6 months after contract negotiation. *See* Government Brief at p. 5. THIS IS A LEGAL IMPOSSIBILITY! Finally, TINA does not apply to "commercial items," 41 U.S.C. § 254b(b)(1)(B); 10 U.S.C. 2306(b)(1)(B), and the *patented* laptop hinge repair kits are clearly commercial items. Of course, the Court need not reach any of these issues because there is no TINA duty from a subcontractor to the Government as a matter of law.

   **A. The Government's Legally Impossible Theory of Liability**

The Government asserts that its theory of liability is that "defendants' claims were false and fraudulent both because they violated an agreement by the defendants to charge only for direct cost of materials *and* because those claims violated TINA and the FAR pricing provisions that were incorporated into the contract." Government Brief at p. 6. The portion of this quote

---

[3] In government contract parlance, a flow down claim would be a claim that "flows" from the government to the prime contractor, and then from the prime contractor to a subcontractor.

preceding the word *"and"* about an alleged violation of an "agreement" is the theory that is contained in the Government Complaint and concerning which it provided discovery. The portion of the quote after the word *"and"* about violations of "TINA and the FAR pricing provisions that were incorporated into the contract (we assume that these are the TINA provisions[4])" have been raised for the first time in the past few weeks.

As shown above, there is no possible TINA duty here between RGI and the Government. The only TINA duty possible is between DMSI, a non-party to this litigation, and the Government. In a nutshell, then, the Government's new theory of liability is legally impossible.

### B. The Government's Misleading Discussion of the False Claims Act and TINA

We have argued to this Court *ad nauseum* precisely what the Government is now admitting for the first time: that "a claim can be false under the False Claims Act either because it violates the terms of a contract between the government and the defendants or because it violates a statutory, regulatory or promissory duty[5] a defendant owes to the government." Government Brief at pp. 7-8. For example, in the summary judgment part of this case four years ago, we repeatedly advised the Court that the Government had failed to respond to the fact that *"there is no statute, regulation or contract clause which precluded RGI's from charging any fixed price for its hinge repair kit invention that the market would bear*." Defendants' Opposition To Plaintiff'S Motion For Summary Judgment And Reply Memorandum In Support

---

[4] As the Government has withheld discovery, we can only assume.

[5] We note that "although promissory fraud may be actionable in rare circumstances under the FCA, the promise must be false when made." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). *See U.S. v. Shah*, 44 F.3d 285, 290 (5th Cir. 1995) (holding a promise of nondisclosure made after the defendant had made a specific promise to another party to disclose the information was actionable). "For a certified statement to be 'false' under the Act, it must be an intentional, palpable lie." *United States ex rel. Hopper v. Anton*, *supra*. "Innocent mistakes, mere negligent misrepresentations and differences in interpretations are not false certifications under the Act." *Id.*

Of Defendants' Joint Motion For Summary Judgment And Partial Dismissal For Lack Of Jurisdiction (filed 2/6/03) (papers 28 and 29), at pp. 24-25 (emphasis in original).

The Government's response to our argument prior to three weeks ago was merely to parrot its Complaint in this matter and assert that defendants are bound by a contract between DMSI and the Government, even though the defendants were not parties to that contract. Years ago, we advised the Court as follows regarding that Government position:

> The government's position – that a subcontractor or supplier is bound by the pricing provisions of a prime contractor's contract with the United States – is not supported by any reading of any contract or applicable law. We urge the Court to demand that the government identify the provision of law or contract which supports its theory. It will be unable to do so, because none exists. Thus, as the underlying wrong simply does not exist, there can be no false claims, no misrepresentations, and no breaches of contractual undertakings, as a matter of law. *United States v. Napco International, Inc.*, 835 F. Supp. 493 (D. Minn. 1993) (dismissing allegations of false claims, payment by mistake, and unjust enrichment when the underlying Arms Export Control statutes and underlying regulations did not render the billing false).

Defendants' Joint Memorandum In Support Of Motion for Summary Judgment and for Partial Dismissal For Lack Of Jurisdiction (filed 1/6/03) (paper 16) at pp. 13-14.

Now, the Government finally admits that what we said was correct, so it now has changed the theory of the case pleaded in its complaint, just three weeks prior to trial, raising TINA as defendants' "statutory duty" at issue.

Of course, a subcontractor has no TINA duty to the Government, as pointed out above. Thus, if the Court reviews the cases that the Government cites to contend that an underlying TINA disclosure can support a FCA claim, which is theoretically possible because a TINA disclosure chronologically precedes a claim for payment, it will not find a single case in which the TINA duty is asserted *by the Government against a subcontractor* because, as we have pointed out, and as the Government fails to address, a subcontractor has no TINA duty to the

7

Government.  If a subcontractor is bound to make a TINA disclosure because of a contract clause in its subcontract (which is not the case here), that subcontractor has a duty to the prime contractor and it is the prime contractor that has a duty to the Government.  Thus, an FCA liability cannot be supported by a TINA duty of a subcontractor to the Government, because there is no TINA duty of a subcontractor to the Government.

It is simply beyond dispute that lack of privity precludes the Government from asserting a TINA duty against a subcontractor, as every case has decided from time immemorial.  *See, e.g., supra* at pp. 1-4.  Thus, when the Government complains that "if the defendants were correct, it would mean that a completely innocent prime contractor could be punished by being forced to relinquish the overcharge, while the guilty party, the subcontractor whose invoices were falsely inflated, would get away scott free," Government Brief at p. 12, that is precisely the TINA law that the Government wrote.  As noted above, "[e]ven where it appears that the prime contractor is not at fault, the prime contractor is responsible to the Government for the impact upon the prime contract of the subcontractor defective data.  *Lockheed Aircraft Corporation v. United States*, 193 Ct. Cl. 86, 432 F.2d 801 (1971)."  *General Dynamics Corp.,* 94-1 B.C.A. (CCH) ¶ 26,339 (ASBCA 1993).

Moreover, the only way a subcontractor may go "scott free," as the Government says, is if the prime contractor does not include a TINA clause in the subcontractor's subcontract.  But, if the prime contractor makes that mistake, it is the prime contractor which is at fault.  Again, as noted above:

> If a prime contractor omits to include such a clause in the subcontract, it follows that the onus of a "violation" by the subcontractor--putative defective pricing-- falls on the prime contractor without recourse to the subcontractor. *See* 10 U.S.C. § 2306a(e)(i)(A) (2000).  The subcontractor in such a situation has not committed "defective pricing" because it is under no independent statutory or regulatory obligation to follow TINA or the FAR clauses implementing it.

8

Richard Johnson, *Identifying "Subcontractors" Under TINA and Access-To-Records Statutes: Filling an Annoying Gap in Government Contracts Jurisprudence*, 32 Pub. Cont. L.J. 739 (2003) (footnotes omitted).

The Government's entire position in this matter flies in the face of its own statutes and regulations. Surely, this Court cannot permit the Government to proceed in such a completely improper manner.

    **C.**    **The Government Cannot Avoid its Hiding Information in Discovery**

It is quite astonishing that the Government is accusing defendants of hiding information leading to liability under the FCA, when it is the Government which has hid information from the defendants in discovery. Beginning in 2002, now 5 years ago, we have specifically pointed out the Government's answer to Interrogatory 3 in briefing to this Court, quoting it verbatim to the Court, and we have repeatedly urged the Court "to demand that the government identify the provision of law or contract which supports its theory" in this case or, alternatively, dismiss this action. Defendants' Joint Memorandum In Support Of Motion for Summary Judgment and for Partial Dismissal For Lack Of Jurisdiction (filed 1/6/03) (paper 16) at pp. 13-14.[6]

The Government, until 3 weeks ago, refused. Now, the Government says that when it stated in Interrogatory 3 in 2002, that "the United States of America hereby refers the defendants to the documents produced pursuant to the Response to Request for Production for such additional information as may be derived or ascertained from such records as easily by the Defendants as by the United States" that was enough to tell us to do discovery about the alleged TINA contract clause, which the Government first asserted a few weeks ago. Government Brief

---

[6] We even wrote the Court on or about January 28, 2003, in response to an earlier Government letter, in which we made this request and asked the Court to force the Government to disclose this matter. *See* Letter from Defendants to Judge Nickerson, dated January 28, 2003.

at pp. 14-15.[7]  The Government makes this assertion despite the fact that Fed. R. Civ. P. 33 requires that any reference to documents in an interrogatory response "shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."  Fed. R. Civ. P. 33(d).  And, to make matters worse, the Government relies on this Court's now vacated order for cover, because of the allegedly "broad nature of this interrogatory."  Government Brief at p. 15.

Interrogatory 3 asked the Government to "identify each specific provision in every contract that you contend limits any defendant's right to markup the product."  How is this broad?  And, how is it that the Government now, three weeks prior to trial, suddenly has no problem identifying the TINA contract provisions as those that it "contend[s] limits any defendant's right to markup the product"?  The answer to these queries, of course, is that the Government decided to hide this information from defendants for years, despite its discovery obligations, including its obligation to supplement its interrogatory responses, *see* Fed. R. Civ. P. 26(e), in order to spring it on defendants just three weeks prior to trial, so as to preclude additional discovery and motions for summary judgment about the matter.  This tactic is reprehensible, and should be rejected by the Court.

---

[7]  The Government's contention that undersigned counsel should have somehow guessed at the Government's contentions and was remiss in not understanding the Government's silent omissions of discovery, is beyond absurd.  Discovery is limited to that which is at issue.  The Government never put the TINA matter at issue until a few weeks ago!

## CONCLUSION

For the foregoing reasons, the Government should be barred from referring to TINA in this matter.

                    Respectfully submitted,

                    S/Edward J. Tolchin
                    Edward J. Tolchin
                    Fettmann, Tolchin, & Majors, P.C.
                    10509 Judicial Drive, Suite 300
                    Fairfax, VA 22030
                    703-385-9500
                    703-385-9893 (facsimile)
                    etolchin@ftm-pc.com

## Certificate of Service

I hereby certify on this 10th day of October 2007, the foregoing Defendants' Reply Memorandum in Support of Motion in Limine was served via electronic filing with the Court to those persons receiving ECF notice.

                    S/Edward J. Tolchin
                    Edward J. Tolchin