IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| V. | : Civil No. WMN-02-0754 |
| JOHN RACHEL, et. al. | : |

...oooOooo...

GOVERNMENT'S MOTION TO ADMIT EVIDENCE
PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by its undersigned counsel, Rod J. Rosenstein, United States Attorney for the district of Maryland and Jamie M. Bennett, Assistant United States Attorney for said district, respectfully submits this Motion To Admit Evidence Pursuant to Federal Rule Of Evidence 404(b).

STATEMENT OF FACTS

The facts of this case are set forth at length in the Court's decision on the parties' cross-motions for summary judgment, *United States v. Rachel*, 289 F.Supp.2d 688 (D.Md. 2003) and in the Fourth Circuit's subsequent opinion. *United States v. Rachel*, 2006 WL 3522228 (4th Cir. 2006). The facts as relevant to this motion are as follows: In November of 1994 the defendant RGI Inc. entered into a Teaming Agreement with DSMI to bid on an IRS contract to repair laptop computers. That proposal identified DSMI as the prime contractor and RGI as the subcontractor. In September of 1995, the defendant submitted a pricing proposal to the IRS for this contract. In this pricing proposal, RGI represented that it would charge the government only for direct material costs plus a five percent mark-up for G&A. The evidence shows that RGI paid its vendor, TDR, approximately $23 for the hinge repair kits supplied under the contract and that

RGI charged the IRS $122 for this same item. To accomplish this fraud the defendants created invoices falsely representing that RGI had purchased the hinge repair kit from CSM, a company that the government alleges was created by Rachel for the sole purpose of inflating RGI's costs under the IRS contract. The government contends that the defendants violated the False Claims Act when they submitted or caused the submission of false or fraudulent claims to the Internal Revenue Service ("IRS") in connection with this hinge repair kit. The government also contends that the defendants failed to disclose the true cost for the hinge repair kits as required by statute and by federal regulations that were made a part of the contract and were binding on prime and subcontractors. The defendants contend that the invoices were not fraudulent because the price RGI paid TDR for the hinge repair kit did not include the cost of a "warranty" that RGI was required to provide to the IRS and also did not include Rachel's cost of developing and patenting the hinge repair kits. The defendants argue that CSM was created, not for the purpose of defrauding the IRS, but for the purpose of insulating RGI from liability if the laptop hinge repair kits failed.

Under the False Claims Act, the burden is on the government to prove intent to defraud. The False Claims Act provides that the government must prove that the defendant acted "knowingly" with respect to the submission of false information, which means that the person acted either with actual knowledge or in reckless disregard or deliberate ignorance of the truth or falsity of the information. 31 U.S.C. §3729(b). The defendants' contention that the difference between the price they paid TDR and the price they charged the government for the hinge repair kit reflected legitimate costs that they were permitted to charge the government places their intent squarely in issue, opening the door to the introduction of evidence under Federal Rule of

2

Evidence 404(b).

One of the avenues available to prove intent is evidence of other acts committed by the defendant which are similar enough to the charged act to provide a window on the defendant's state of mind. In this case, there are two similar acts that illuminate John Rachel's state of mind, and these uncharged acts should be admitted under Federal Rule of Evidence 404(b). First, with respect to the same contract that is at issue in this case, the government has additional evidence of fraud that should be admitted to prove the defendant's state of mind. This evidence shows that not only did Mr. Rachel submit invoices to DSMI for hinge repair kits that were inflated by a factor of five over the cost of those kits but that Rachel also inflated the cost of another component acquired from the same vendor, specifically a component used to repair keyboards, which RGI purchased from TDR for $18.00 and billed to the government at $75.60. (Samples of the invoices relating to this transaction are attached hereto as Exhibit 1.) These inflated costs were passed along to the IRS when DSMI unwittingly invoiced the government for the higher amount. There is no evidence that Rachel developed the design for the keyboard repair, nor was he required to provide the government with a warranty for these parts under the contract. The only explanation for these inflated cost of these keyboard covers is fraud. The fact that Rachel was willing to defraud the government in connection with other materials costs on the same contract through an identical scheme, makes this evidence highly probative of the fact that Rachel's intent was to commit fraud, not to charge the government for the reasonable cost of the laptop hinge repair kits.

Secondly, Mr. Rachel has a prior conviction for defrauding the government , in connection with a contract to provide the Federal Aviation Administration ("FAA") with

printers.  Rachel pleaded guilty, on July 19, 1999, to paying an unlawful kickback in connection with this contract, in violation of Title 41 United States Code, Section 53. (The Indictment in that case is attached hereto as Exhibit 2; Mr. Rachel's guilty plea is attached hereto as Exhibit 3.)  In the agreed upon Statement of Facts, Rachel admitted that he had charged DSMI an inflated price for materials, in this case a tear bar for a printer, that were subsequently billed to the FAA.  (The Statement of Facts is attached hereto as Exhibit 3.)  Rachel admitted that he purchased the tear bars from TDR for $77,762 and invoiced them at four times that amount to DSMI, through another "subsidiary"corporation, Computer Software Engineering Inc.(CSEI).  The resulting difference was split between Rachel and an employee of DSMI, Bradley Bowen, who had agreed to steer business from DSMI to Rachel on future government contracts in return for the money he received.  Rachel was subsequently sentenced to a year in prison for this offense and on August 25, 2000 he was debarred from government contracting.. (The Notice of Debarment is attached hereto as Exhibit 5.)  This conviction involving a nearly identical scheme to defraud the government is also directly relevant to Mr. Rachel's intent to defraud the government.  Both the conviction and the underlying facts should be admitted in evidence in this case.

## ARGUMENT

_____Federal Rule of Evidence 404(b) permits that introduction of "[e]vidence of other crimes, wrongs, or acts . . . for proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident . . . ."  The government seeks to admit evidence of Rachel's prior conviction for kickbacks in connection with the FAA contract described above and of a similar scheme to defraud the government in connection with the IRS contract at issue here as evidence of the defendant's intent to defraud the government.  The question of

admissibility is governed by the Fourth Circuit's decision in *United States v. Queen*, 132 F.3d 991 (4th Cir. 1997). In *Queen*, the Fourth Circuit noted that when intent to commit a crime is at issue, evidence of prior similar acts has regularly been admitted. *Id* at 996. The Fourth Circuit found that extrinsic evidence may be crucial to establishing the truth "especially when that issue involves the actor's state of mind, and the only means of ascertaining that mental state is by drawing inferences from conduct." *Id*. (*quoting Huddleston v. United States*, 485 U.S. 681, 685 (1988). The Fourth Circuit went on to explain that "[o]nce an act is assumed to be done, "the prior doing of other similar acts . . . is useful as reducing the possibility that the act in question was done with innocent intent." *Id*. Similarity between the act in question and the extrinsic evidence may be shown either through the physical similarity of the act, or the similarity of the state of mind needed to perpetrate the extrinsic act. *Id*.

     In *Queen*, the Fourth Circuit set forth a four-part test for district courts to use in evaluating Rule 404(b) evidence. The Court noted that Rule 404(b) is a rule in *inclusion*, and that the rule should be liberally construed to permit the introduction of other acts evidence in appropriate circumstances. *Id*. at 997. The four-part test set forth in *Queen* requires the courts to admit evidence of other acts if : (1) the evidence is relevant to an issue in the case; (2) the evidence is necessary, in that it is probative of an essential claim or element of the offense; (3) the evidence is reliable; and (4) the evidence's probative value is not substantially outweighed by any unfair prejudice, in the sense that it tends to subordinate reason to emotion in the factfinding process. *Id*.

     In *Queen,* the defendant, was charged with witness tampering in connection with a case that was pending in federal court in 1994 to 1995. The government sought to introduce evidence

of two prior incidents of witness tampering by the defendant in 1986. *Id*. The Fourth Circuit held that the prior acts used to establish the defendant's mental state must either be physically similar or show that the defendant had the same state of mind at the time of the extrinsic act and the charged offense, and concluded that "the high degree of similarity between the prior acts and the act with which Queen was charged supports the finding that the acts were relevant to intent." *Id*. It is self evident that Rachel's similar scheme to defraud the IRS with respect to the true cost of keyboard repairs is directly relevant to the jury's inquiry in the instant case, under the test set forth in *Queen*. It is also obvious that Rachel's overcharging and the use of kickbacks to get other government work is relevant to his state of mind, which clearly is not that of a person who is prepared to be honest and above-board in all of his dealings with the government.

      The court must also determine whether the evidence is necessary under the test set forth in *Queen*. "Necessity" is determined in the context of "other evidence available to the government. *Id*. at 998 (citing *United States v. DiZenzzo*, 500 F.2d 263, 266 (5th Cir. 1974)). The evidence of Rachel's other, similar acts is necessary to prove intent. Mr. Rachel will testify that he did not intend to defraud the government, but that he believed he could charge the government for the reasonable cost of the hinge repair "design" and "warranty". The government has no direct evidence of Mr. Rachel's state of mind. In *Queen* the Fourth Circuit upheld the admission of 404(b) evidence even where the government had witnesses that could testify to the defendant's intent, finding that the other crimes evidence still met the criteria of "necessity." This is even more true where the government lacks a witness that can shed direct light on the Rachel's state of mind when he submitted the inflated invoices to the IRS.

      The third prong of *Queen* requires that the evidence be reliable. The evidence the

6

government will offer takes the form of a certified copy of Mr. Rachel's prior conviction which is inherently reliable. The invoices that prove the fraud on the IRS computer contract that is at issue in this case are business records that were recovered in search warrants, or voluntarily produced in the course of the investigation in this matter and will be corroborated by witnesses with first hand knowledge of these transactions.

Finally, the probative value of this evidence is not substantially outweighed by any prejudice. As the *Queen* court noted, the evidence is prejudicial because it is so highly probative of intent, but it is not the type of evidence that would lead a jury to abandon rational fact-finding. *Id*. at 7-8, especially when the Court can give the jury a limiting instruction.

## **CONCLUSION**

For all the foregoing reasons, the government respectfully requests that the Court admit the evidence of John Rachel's prior conviction and the evidence of additional fraud in connection with the IRS contract as evidence of intent.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


By: _____
    Jamie M. Bennett
    Assistant United States Attorney
    36 South Charles Street
    Baltimore, Maryland 21201-2692
    410/209-4838