IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. _____ |
| | ) | |
| v. | ) | Count 1: Conspiracy |
| | ) | (18 U.S.C. § 371) |
| | ) | |
| BRADLEY W. BOWEN, | ) | Count 2: Unlawful Kickback |
| (Counts 1, 2, 3) | ) | (41 U.S.C. § 53) |
| | ) | |
| JOHN J. RACHEL, | ) | Count 3: Engaging in Monetary |
| (Counts 1, 2, 3) | ) | Transactions in Property Derived |
| | ) | From Specified Unlawful Activity |
| | ) | (18 U.S.C. § 1957) |
| Defendants. | ) | |

## INDICTMENT

April 1999 Term at Alexandria

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times material to this indictment:

The Defendants, Their Co-Conspirator and Corporations:

1.  Defendant BRADLEY W. BOWEN was a partial owner and an employee of Diez Software Services, Inc., which did business as Diez Management Systems, Inc. (DMSI). DMSI was a corporation engaged primarily in the business of information systems management and related services.

2.  DMSI qualified as a Section 8(a) disadvantaged small business under the federal government's Small Business Act. Pursuant to the Section 8(a) program, DMSI was eligible to

EXHIBIT   017

compete for government contracts that had been set aside for Section 8(a) contractors, including contracts set aside for small disadvantaged businesses.

3. DMSI was headquartered in Lake Ridge, Virginia, in the Eastern District of Virginia, and had a branch office in Egg Harbor City, New Jersey. DMSI employed approximately six individuals, including defendant BRADLEY W. BOWEN and his unindicted co-conspirator.

4. Defendant BRADLEY W. BOWEN was the owner and president of Av Comm, Inc. and AES Computers, Inc. (AES). Defendant BOWEN's wife was the owner and president of KB Codes Corp. (KB Codes). Defendants used these three corporate entities to conceal their conspiracy and scheme to defraud, as described below.

5. Av Comm, Inc. was located at 14 Gate Road, Vincentown, New Jersey. Av Comm, Inc. had no employees.

6. KB Codes was located at 14 Gate Road, Vincentown, New Jersey. KB Codes had no employees.

7. AES was located at Post Office Box 533, Egg Harbor City, New Jersey. AES had no employees.

8. Defendant JOHN J. RACHEL was the president of Computer Software Engineering, Inc. (CSEI) and the owner and president of RGI, Inc. (RGI). Defendants used these two corporations to inflate costs on a government contract and to generate illegal kickback payments, as described below.

9. CSEI was located at 5203 Leesburg Pike, Suite 1300, Falls Church, Virginia. CSEI had no employees.

10. RGI was also located at 5203 Leesburg Pike, Suite 1300, Falls Church, Virginia. RGI

prime contract (number DTFA01-92-C-00015).

The above allegations are re-alleged and incorporated into each count of the indictment as though fully set forth therein.

## COUNT ONE

(Conspiracy)

THE GRAND JURY FURTHER CHARGES THAT:

### THE CONSPIRACY AND ITS OBJECTS

15. Beginning in or about June 1992, and continuing through in or about December 1993, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, defendants BRADLEY W. BOWEN and JOHN J. RACHEL, and others known and unknown to the grand jury, did unlawfully and knowingly conspire, combine and agree with each other:

    A.    To defraud the United States of America of its right to have its business and its affairs, and particularly the official business of the FAA, conducted honestly and impartially, free from fraud, dishonesty, kickbacks and unlawful impairment; and

    B.    To commit the following offenses against the United States:

        (1)    To provide, offer, solicit, and accept kickbacks, in violation of Title 41, United States Code, Section 53;

        (2)    To commit mail fraud, in violation of Title 18, United States Code, Section 1341;

        (3)    To commit wire fraud, in violation of Title 18, United States Code, Section 1343;

        (4)    To commit money laundering, in violation of Title 18, United States Code,

Section 1957.

## THE MANNER AND MEANS OF THE CONSPIRACY

16.     It was part of the conspiracy that BRADLEY W. BOWEN and another DMSI employee, acting on behalf of DMSI, directed to CSEI performance of the tear bar modification to FAA prime contract number DTFA01-92-C-00015 in return for kickback payments from JOHN J. RACHEL.

17.     It was further a part of the conspiracy that during negotiations with the FAA relating to the contract modification, BRADLEY W. BOWEN supplied to the FAA CSEI price quotes which BOWEN received from JOHN J. RACHEL and which included the kickbacks which RACHEL had agreed to provide to BOWEN and another DMSI employee.

18.     It was further a part of the conspiracy that a DMSI employee, acting on behalf of DMSI, paid CSEI approximately $297,832, pursuant to a vending agreement by which DMSI purchased from CSEI 2,625 modified tear bars and 1,050 unmodified tear bars to be used to manufacture the modified tear bars. CSEI obtained the modified tear bars from RGI which, in turn, obtained the modified tear bars from a manufacturer located in Chantilly, Virginia, at a cost of approximately $77,762.

19.     It was further a part of the conspiracy that BRADLEY W. BOWEN and another DMSI employee, both acting on behalf of DMSI, caused public voucher forms to be generated and mailed to the FAA for payment in connection with the tear bar modification to DMSI's prime contract with the FAA.

20.     It was further a part of the conspiracy that JOHN J. RACHEL provided to BRADLEY W. BOWEN approximately $120,000 in kickback payments by issuing CSEI checks made payable to

Av Comm, Inc. and KB Codes, corporate entities owned by BOWEN and BOWEN's wife.

21. It was further a part of the conspiracy that BRADLEY W. BOWEN caused a portion of the $120,000 in kickback funds that he received from JOHN J. RACHEL to be transferred from Av Comm, Inc. and KB Codes, to AES, a corporation owned by BOWEN.

22. It was further a part of the conspiracy that BRADLEY W. BOWEN caused another DMSI employee to be paid $40,000 out of the kickback funds that BOWEN received from JOHN J. RACHEL.

23. It was further a part of the conspiracy that JOHN J. RACHEL and BRADLEY W. BOWEN and another DMSI employee used, and caused to be used, the United States mail and interstate wire communication facilities to implement and conduct their scheme to generate and conceal the kickbacks.

## OVERT ACTS OF THE CONSPIRACY

24. In furtherance of the conspiracy, and to effect the objects of the conspiracy, defendants BRADLEY W. BOWEN and JOHN J. RACHEL, and other unindicted co-conspirators known and unknown to the grand jury, committed and caused to be committed, in the Eastern District of Virginia and elsewhere, the following overt acts, among others:

    A. On or about October 1, 1992, JOHN J. RACHEL approved, from RGI's office in Falls Church, Virginia, in the Eastern District of Virginia, a purchase order from RGI to a manufacturer, located in Chantilly, Virginia, for 2,700 modified tear bars at a cost of $78,030.

    B. From on or about January 8, 1993, through on or about April 16, 1993, BRADLEY W. BOWEN, acting on behalf of DMSI, negotiated with FAA officials the cost of the tear bar modification to FAA prime contract number DTFA01-92-C-00015:

(1) On or about January 8, 1993, BRADLEY W. BOWEN faxed, or caused to be faxed, from DMSI's office in Egg Harbor City, New Jersey, to the FAA Contracting Specialist in Washington, D.C., a price estimate to provide 2,625 modified tear bars at a total cost of $298,593.75.

(2) On or about March 10, 1993, BRADLEY W. BOWEN faxed, or caused to be faxed, from DMSI's office in Egg Harbor City, New Jersey, to the FAA Contracting Officer in Washington, D.C., a revised price estimate which included obtaining for modification an additional 1,050 unmodified Dataproducts brand tear bars, as well as providing a total of 2,625 modified tear bars, at a fixed price of $313,916.75.

(3) On or about March 12, 1993, BRADLEY W. BOWEN faxed, or caused to be faxed, from DMSI's office in Egg Harbor City, New Jersey, to the FAA Contracting Specialist in Washington, D.C., a letter that confirmed DMSI's total negotiated price of $310,957.50.

(4) On or about March 16, 1993, JOHN J. RACHEL faxed, or caused to be faxed, from RGI's office in Falls Church, Virginia, in the Eastern District of Virginia, to BRADLEY W. BOWEN, in DMSI's office in Egg Harbor City, New Jersey, two CSEI price quotes. One of these CSEI price quotes was dated February 4, 1993; the other price quote was not dated. These two price quotes indicated that CSEI would obtain for modification 1,050 unmodified Dataproducts brand tear bars for a fixed price of $30,712.50 and would provide a total of 2,625 modified tear bars for a fixed price of $247,275.

(5) On or about March 16, 1993, BRADLEY W. BOWEN faxed, or caused to be faxed, from DMSI's office in Egg Harbor City, New Jersey, to the FAA in Washington, D.C., the CSEI price quotes, described in paragraph B.(4), that BOWEN had obtained from JOHN J.

7

RACHEL.

C.  On or about the following dates, BRADLEY W. BOWEN loaned $56,200 in AES funds to CSEI and to RGI to enable these businesses to pay the manufacturer, located in Chantilly, Virginia, for the design and fabrication of the modified tear bars:

(1)  On or about March 1, 1993, BRADLEY W. BOWEN drew an AES check in the amount of $31,200 payable to CSEI.

(2)  On or about April 6, 1993, BRADLEY W. BOWEN drew an AES check in the amount of $15,000 payable to CSEI.

(3)  On or about August 9, 1993, BRADLEY W. BOWEN drew a certified AES check in the amount of $10,000 payable to RGI.

D.  On or about the following dates, in the Eastern District of Virginia and elsewhere, JOHN J. RACHEL caused CSEI to prepare and mail to DMSI invoices in the following amounts, and BRADLEY W. BOWEN and another DMSI employee caused DMSI to pay the CSEI invoices in the following amounts:

| Overt Act # | Date of CSEI Invoice to DMSI | Amount of CSEI Invoice to DMSI | Date of DMSI payment to CSEI | Amount DMSI paid to CSEI |
|---|---|---|---|---|
| D.(1) | 4/20/93 | $112,241.28 | 4/27/93 | $112,241.28 |
| D.(2) | 5/14/93 | $24,015.36 | 6/15/93 | $24,015.36 |
| D.(3) | 6/11/93 | $25,338.24 | 7/23/93 | $25,338.24 |
| D.(4) | 7/9/93 | $37,244.16 | | |
| D.(5) | 7/9/93 | $10,939.50 | 8/13/93 | $48,183.66 |
| D.(6) | 8/19/93 | $68,280.96 | 10/21/93 | $58,053.96 |
| D.(7) | 8/19/93 | $19,773.00 | 10/25/93 | $30,000.00 |

E. On or about the following dates, JOHN J. RACHEL, BRADLEY W. BOWEN, and another DMSI employee caused DMSI invoices for payment on the tear bar modification to prime contract number DTFA01-92-C-00015 (which invoices included amounts to generate the above-noted kickbacks) to be sent in the United States mails from DMSI's office in Lake Ridge, Virginia, in the Eastern District of Virginia, to the FAA, in Washington, D.C.:

| Overt Act # | Invoice #5004.000-05- | Date of Invoice | Amt. DMSI billed FAA | Date of Payment by FAA | Amt. FAA paid DMSI |
|---|---|---|---|---|---|
| E.(1) | 0063 | 4/16/93 | $117,756.28 | 5/19/93 | $117,756.28 |
| E.(2) | 0073 | 5/18/93 | $25,195.36 | 6/18/93 | $25,195.36 |
| E.(3) | 0079 | 6/21/93 | $26,583.24 | 7/22/93 | $26,583.24 |
| E.(4) | 0083 | 7/12/93 | $39,074.16 | | |
| E.(5) | 0084 | 7/13/93 | $10,939.50 | 8/13/93 | $50,013.66 |
| E.(6) | 0095 | 8/19/93 | $19,773.00 | 9/17/93 | $19,773.00 |
| E.(7) | 0096 | 8/19/93 | $71,635.96 | 9/23/93 | $71,635.96 |

F. From on or about May 20, 1993, through on or about October 27, 1993, JOHN J. RACHEL, through CSEI, paid BRADLEY W. BOWEN, through Av Comm, Inc., and KB Codes, approximately $120,000 in kickback payments and approximately $56,200 in loan repayments in connection with the tear bar modification to the FAA contract:

(1) On or about May 20, 1993, JOHN J. RACHEL drew a CSEI check in the amount of $43,487.88 payable to Av Comm, Inc.

(2) On or about June 21, 1993, JOHN J. RACHEL drew a CSEI check in the amount of $24,000 payable to KB Codes.

(3) On or about July 23, 1993, JOHN J. RACHEL drew a CSEI check in the amount of $20,000 payable to KB Codes.

(4) On or about August 18, 1993, JOHN J. RACHEL drew a CSEI check in the amount of $17,258.26 payable to KB Codes.

(5) On or about October 27, 1993, JOHN J. RACHEL drew a CSEI check in the amount of $88,053.96 payable to KB Codes.

G. From in or about June 1993, through in or about November 1993, BRADLEY W. BOWEN caused some of the kickback payments and loan repayments, described in paragraph F. above, that JOHN J. RACHEL and CSEI had paid to BRADLEY W. BOWEN, through Av Comm, Inc. and KB Codes, to be transferred to AES:

| Overt Act | Approximate Date of Transfer | Amount of Transfer | Account From Which Transfer Originated |
|---|---|---|---|
| G.(1) | 6/24/93 | $15,000 | Av Comm, Inc. |
| G.(2) | 7/6/93 | $30,000 | KB Codes |
| G.(3) | 8/10/93 | $35,000 | KB Codes |
| G.(4) | 11/6/93 | $60,000 | KB Codes |

H. In or about December 1993, BRADLEY W. BOWEN caused $40,000 of the kickback payments that he had received from JOHN J. RACHEL to be delivered to another employee of DMSI by causing a check in the amount of $40,000 to be drawn on the AES account.

I. On or about December 30, 1993, in the Eastern District of Virginia, a DMSI employee generated a false invoice to AES to conceal the nature of the $40,000 payment that he

10

194

had received from BRADLEY W. BOWEN.

(In violation of Title 18 United States Code, Section 371.)

## COUNT TWO

THE GRAND JURY FURTHER CHARGES THAT:

In or about December 1993, in the Eastern District of Virginia and elsewhere, defendants JOHN J. RACHEL and BRADLEY W. BOWEN did knowingly provide a $40,000 kickback in connection with the tear bar modification to Federal Aviation Administration Flight Data Input/Output contract (number DTFA01-92-C-00015).

(In violation of Title 41, United States Code, Section 53 and Title 18 United States Code, Section 2.)

## COUNT THREE

THE GRAND JURY FURTHER CHARGES THAT:

In or about December 1993, in the Eastern District of Virginia and elsewhere, defendants JOHN J. RACHEL and BRADLEY W. BOWEN did knowingly and willfully engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, in and affecting interstate commerce, to wit, causing the withdrawal of funds by causing to be issued and by delivering a $40,000 check, drawn on AES account number 5078000105 at Collective Federal Savings Bank, a financial institution, which criminally derived property had a value greater than $10,000 and was derived from specified unlawful activities, that is mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 & 1343.

(In violation of Title 18, United States Code, Sections 1957 and 2.)

11

195

_____
**FOREPERSON**
**UNITED STATES GRAND JURY**


_____
HELEN F. FAHEY
UNITED STATES ATTORNEY


_____
JUSTIN W. WILLIAMS
ASSISTANT UNITED STATES ATTORNEY
CHIEF, CRIMINAL DIVISION

*Dabney Langhorne*
_____
DABNEY LANGHORNE
ASSISTANT UNITED STATES ATTORNEY