IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| V. | : | **CRIMINAL NO. WMN-02-0754** |
| **JOHN RACHEL, et. al.** | : | |

...oooOooo...

## GOVERNMENT'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by its undersigned counsel, Rod J. Rosenstein, United States Attorney for the district of Maryland and Jamie M. Bennett and Michael A. DiPietro, Assistant United States Attorneys for said district, respectfully submits this Reply to the Defendants' Opposition to the Government's Motion To Admit Evidence Pursuant to Federal Rule Of Evidence 404(b).

1. In this case, the government alleges that RGI agreed that it would charge the Internal Revenue only for direct material costs plus a five percent mark-up for G & A under a contract to repair laptop computers. The evidence will show that RGI paid its vendor, TDR, approximately $23 for the hinge repair kits supplied under the contract and that RGI charged the IRS $122 for this same item. In order to avoid the clear terms of the contract, under which RGI was only permitted to charge direct materials cost, the defendants created a sham corporation, CSM, and directed TDR to submit invoices to CSM, which CSM then "submitted" to RGI at the inflated price. RGI then submitted these bogus invoices to DSMI and was reimbursed for the higher price.

2. The defendants counter these allegations by arguing that the invoices CSM submitted

to RGI, and which RGI in turn submitted to the IRS through DSMI, were not fraudulent because the price RGI paid TDR for the hinge repair kit did not include the cost of a "warranty" that RGI was required to provide to the IRS and also did not include Rachel's cost of "developing" and patenting the repair kits. The defendants argue that CSM was created, not for the purpose of defrauding the IRS, but for the purpose of insulating RGI from liability if the laptop hinge repair failed.

      3. Under the False Claims Act, the burden is on the government to prove intent to defraud. The False Claims Act provides that the government must prove that the defendant acted "knowingly" with respect to the submission of false information, which means that the person acted either with actual knowledge or in reckless disregard or deliberate ignorance of the truth or falsity of the information. 31 U.S.C. §3729(b). The defendants' contention that the difference between the price they were charged by TDR and the price they charged the government reflected legitimate costs that they were permitted to charge the government and that those invoices were not part of a scheme to defraud the government places their intent squarely in issue, opening the door to the introduction of evidence under Federal Rule of Evidence 404(b). The government has offered two prior acts which are probative to show that John Rachel intended to defraud the government.

      4. First, the evidence shows that RGI billed DSMI, $75.60 for a laptop cover that it purchased from TDR for $18.00. See Exhibit 1 to Government's Motion to Admit Evidence Pursuant to Rule 404(b). These inflated costs were also passed along to the IRS when TDR's invoices were marked up by CSM, which again "submitted" the invoices for the keyboard cover to RGI at the higher price. DSMI unwittingly invoiced the government for the higher amount

when RGI submitted the inflated invoices seeking payment under the laptop repair contract. There is no evidence that Rachel developed the design for these laptop covers, nor was he required to provide the government with a warranty for these parts under the contract. The only explanation for these inflated cost of these keyboard covers is fraud. The fact that Rachel was willing to defraud the government in connection with other materials costs on the same contract, through an identical scheme, makes this evidence highly probative of the fact that Rachel's intent was to commit fraud, not to charge the government for the reasonable cost of the laptop hinge repair kits.

     5. Secondly, Mr. Rachel has a prior conviction for defrauding the government , in connection with a DSMI contract to provide the Federal Aviation Administration ("FAA") with printers. In that case, Rachel pleaded guilty, on July 19, 1999, to paying an unlawful kickback in connection with this contract, in violation of Title 41 United States Code, Section 53. See Exhibit 2 to Government's Motion to Admit Evidence Pursuant to Rule 404(b). In the agreed upon Statement of Facts, Rachel admitted that he had charged DSMI an inflated price for materials, in this case a tear bar for a printer, that were subsequently billed to the FAA   See Exhibit 3 to Government's Motion to Admit Evidence Pursuant to Rule 404(b). Rachel admitted that he used a sham corporation, Computer Software Engineering Inc.(CSEI) to carry out that fraud. The resulting difference was split between Rachel and an employee of DSMI, Bradley Bowen, who had agreed to steer business from DSMI to Rachel on future government contracts in return for the money he received. This conviction involving a nearly identical scheme to defraud the government is also directly relevant to Mr. Rachel's intent to defraud the government. Both the conviction and the underlying facts should be admitted in evidence in this

case.

      6. The defendants' also argue that the evidence relating to Rachel's fraud with respect to the keyboard covers under the IRS contract should not be admitted because it is not sufficiently connected to him, citing *United States v. Young*, 65 F. Supp. 2d 370 (D.Md. 1999). In that case, the government was seeking the admission of an arson of the defendant's car that occurred a year after the kidnapping and murder for which the defendant was on trial. The government argued that the defendant had burned a rental car he had used during the kidnapping to destroy evidence that the victim had been in the car. In *Young*, the evidence of the second car arson was not admitted solely because the government had "little, if any, direct or circumstantial evidence tending to show that defendant burned his car, fabricated the theft, or had a motive to do either." *Id*. At 372. In *Young* the court concluded that while the second arson "clearly fit within Rule 404(b) . . . [as] showing defendant's plan or intent concerning Fire 1," the evidence was not admissible unless "the jury, based on all the evidence before it, could reasonably conclude by a preponderance of the evidence both that the act actually happened and that the defendant committed the act." *Id*. at 372-73. In the instant case, there is no such failure of proof. The evidence will show that Rachel submitted false invoices through the exact same sham company to the government in order to increase his profit on other materials supplied to the government under the very same contract. In the instant case, a jury could easily conclude that Rachel committed the act in question, inflating the cost of the laptop keyboard covers to maximize his profits under the contract.[1]

---

[1] The defendants blithely assert that the keyboard covers were supplied under a "separate agreement" not subject to the cost plus five percent principle. This assertion is not supported by a citation to any evidence, and whatever the defendants' assert, the evidence the government

7. The defendants' oppose the government's request to use Rachel's prior conviction as evidence of intent under Rule 404(b), arguing that the evidence of other bad acts is not admissible in this case because the government is not required to prove specific intent to defraud under the False Claims Act. This argument is specious, because the rule does not limit the use of other bad acts evidence to show specific intent. By its terms, Rule 404(b) permits the introduction of evidence to show intent, knowledge, and absence of mistake or accident, among other thing. Evidence is routinely admitted under Rule 404(b) "for proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident . . . ." In this case, the government does have to prove knowledge, and the Rule 404(b) evidence it seeks to admit is highly probative of the defendants' true state of mind with respect to the use of CSM to disguise its true costs for the hinge repair kits.

8. Finally, the defendants' argue that the evidence of other bad acts should not be admitted because it is unduly prejudicial.  As the Fourth Circuit noted in *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997), the evidence is only prejudicial "because it was so highly probative." The Fourth Circuit concluded that any danger of prejudice or jury confusion could be mitigated by a curative instruction. *Id*. The defendants here have not shown why such an

---

submitted in support of its original motion shows that payment for the keyboard covers was made by the IRS from the funds set aside for the laptop repair contract.

instruction is not sufficient to protect them.

For all the foregoing reasons, the evidence relating to Rachel's other bad acts should be admitted pursuant to Rule 404(b).

>Respectfully submitted,
>
>Rod J. Rosenstein
>United States Attorney
>
>By: _____
>    Jamie M. Bennett
>    Assistant United States Attorney
>    36 South Charles Street
>    Baltimore, Maryland 21201-2692
>    410/209-4838