IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA       :
                               :
v.                             :   Civil No. WMN-02-754
                               :
JOHN RACHEL <u>et al.</u>            :
                               :

MEMORANDUM

Pending before the Court is the government's "Motion to
Admit Evidence Pursuant to Federal Rule of Evidence 404(b)."
Paper No. 74.  The motion is fully briefed and ripe for review.
Upon a review of the pleadings and applicable case law, the Court
determines that no hearing is necessary (Local Rule 105.6) and
that the motion will be granted.

The government brought this civil action against Defendants
John Rachel, his wife, Priscilla Rachel, and two corporations
owned by Mr. Rachel, RGI and CSM, alleging violations of the
False Claims Act (FCA), 31 U.S.C. § 3729 <u>et seq</u>.  The relevant
provisions of the FCA and the factual background for this action
have been discussed in previous opinions of this Court and will
not be repeated here.  Briefly stated, however, the government
alleges that Defendants fraudulently overstated the costs
associated with the repair of hinges on government-owned laptop
computers.  According to the government, RGI owner John Rachel
formed a shell corporation, CSM, in order to inflate costs and
issue false invoices to RGI, which RGI then used to bill the
prime contractor, DMSI, who in turn billed the IRS.  In this

1

manner, RGI would appear to be in compliance with the pricing
terms of the DMSI-IRS contract, while its alter ego, CSM, also
wholly owned by John Rachel, would make a profit of approximately
300 to 400 percent.  Defendants argue that the price markup was
not fraudulent, but in fact reflected legitimate warranty and
development costs incurred by CSM.

On July 10, 2003, this Court granted summary judgment for
the government and later awarded damages and penalties
accordingly.  On December 7, 2006, the Fourth Circuit vacated the
summary judgment and remanded this case for further proceedings.
United States v. Rachel, 208 F. App'x 236 (4th Cir. 2006).  The
Fourth Circuit ruled that summary judgment was improper because,
viewing the evidence in the light most favorable to the
Defendants, a reasonable factfinder could conclude that Mrs.
Rachel "did not have either actual or implied knowledge" of any
fraudulent conduct for purposes of FCA liability and, as to Mr.
Rachel and the corporate Defendants, could conclude that the
claims submitted or caused to be submitted to the government were
not false if the CSM markup was "for the purpose of covering
potential warranty costs."  Id. at 240.

In the instant motion, the government seeks to introduce
evidence of two other crimes, wrongs, or acts under Federal Rule
of Evidence 404(b).  Rule 404(b) provides:

>    **(b) Other Crimes, Wrongs, or Acts.**--Evidence of other
>    crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show action in
conformity therewith. It may, however, be admissible
for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident[.]

The Fourth Circuit explained in <u>United States v. Queen</u>, 132 F.3d

991, 994 (4th Cir. 1997), that, because Rule 404(b) "recognizes

the admissibility of prior crimes, wrongs, or acts, with only the

one stated exception, it is understood to be a rule of inclusion,

authorizing evidence of prior acts for purposes other than

character, such as 'motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident.'"

(Internal citations and footnote omitted.)  In order to be

admissible under Rule 404(b), evidence must meet a four-prong

test:

> (1) the prior-act evidence must be relevant to an issue
> other than character, such as intent; (2) it must be
> necessary to prove an element of the [claim]; (3) it
> must be reliable; and (4) as required by Federal Rule
> of Evidence 403, its probative value must not be
> "substantially outweighed" by its prejudicial nature.

<u>Id.</u> at 995.

The government first seeks to introduce evidence at trial

that, in the course of the same contract with DMSI, Mr. Rachel

inflated the cost of another component - keyboard covers.

According to the invoices, CSM paid TDR $18 per keyboard cover.

<u>See</u> Mot., Ex. 1.  Mr. Rachel, acting through RGI, later invoiced

the same keyboard covers to DMSI for $75.60 per keyboard cover -

3

more the four times the original cost.[1]  Id.  The government
argues that, because there is no evidence that Defendants
incurred any legitimate warranty or design costs with respect to
the keyboard covers, "the only explanation for the[] inflated
cost . . . is fraud."  Mot. at 3.

The government also seeks to introduce evidence of Mr.
Rachel's July, 1999, conviction for paying illegal kickbacks in
connection with a contract with the Federal Aviation
Administration (FAA) involving many of the same companies.[2]
According to the indictment and the agreed statement of facts
entered into by Mr. Rachel as part of his plea agreement, he
engaged in an illegal kickback scheme whereby he purchased tear
bars for printers from TDR and sold them at a markup to DMSI, who
in turn sold them at a markup to the FAA.  Mr. Rachel used two
companies owned by him to accomplish the scheme: RGI and a second
company, Computer Software Engineering, Inc. (CSEI).  TDR would
invoice RGI for the tear bars; RGI would markup the price and
invoice CSEI; CSEI would invoice DMSI; and DMSI would in turn
invoice the government.  Upon payment of the inflated invoices,
Rachel used some of the proceeds to pay kickbacks to two

---

[1] The government only supplies the invoices between TDR/CSM
and between RGI/DMSI.  The interim invoice between CSM/RGI is not
included.

[2] This conviction was subsequent to the contract that is the
subject of the instant case.

4

employees of DMSI who had directed the contract to Mr. Rachel.

The government argues that the evidence of Mr. Rachel's conviction and the markup of the keyboard covers is admissible under Rule 404(b) because it is probative of his intent to defraud the government and is necessary to rebut his argument that the markup on the hinge repair kits reflected legitimate warranty and design costs. Defendants respond that, with respect to the keyboard covers, the government has no evidence that this markup was actually fraudulent and that admission of this evidence would necessitate "a second mini-trial to determine why there was a markup, what costs went into the establishment of the final price, whether these were specially priced items under a separate agreement, and the connection of the keyboard covers to the hinge repair kits at issue in this case." Opp'n at 4. Defendants further argue that evidence concerning Mr. Rachel's prior conviction is inadmissible to show intent because "[i]ntent to defraud is not an element of a violation of the FCA." Id. at 6.

The Court begins by addressing Defendants' argument that, because specific intent to defraud need not be proved under the FCA, 404(b) evidence going to his intent is not admissible.[3] Rule 404(b) does not require that evidence be probative of a

---

[3]Defendants make this argument only with respect to the evidence of the conviction, but it is clearly applicable to all of the evidence the government seeks to introduce.

defendant's <u>specific</u> intent, only that it be probative of "intent," among other permissible uses.  Under the FCA, the government has the burden of proving that Mr. Rachel acted "knowingly" with respect to the allegedly inflated invoices.  The term knowingly is defined under the FCA to mean that "a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information[.]"  31 U.S.C. § 3729(b). Thus, "'[t]he requisite intent [for purposes of the FCA] is the knowing presentation of what is known to be false, as opposed to innocent mistake or mere negligence.'"  <u>United States ex rel. Rueter v. Sparks</u>, 939 F.Supp. 636, (C.D. Ill. 1996) (quoting <u>United States ex rel. Anderson v. N. Telecom Inc.</u>, 52 F.3d 810, 815 (9th Cir. 1995)).  Accordingly, while the Defendants are correct that the government does not have to show specific intent under the FCA, <u>see</u> 31 U.S.C. § 3729(b), it must prove that Mr. Rachel acted with knowledge of the falsity of the invoices. Whether characterized as intent or knowledge, Mr. Rachel's state of mind clearly is at issue.

The Court next turns to the admissibility of the evidence of the markup of the keyboard covers.  Defendants challenge the relevance of this evidence, relying on <u>United States v. Young</u>, 65 F. Supp. 2d 370, 373 (E.D. Va. 1999).  In that case, a defendant was charged with kidnapping resulting in death.  He was alleged

to have been driving a rental car when he kidnapped the victim, shot her, and disposed of her body.  The defendant reported the rental car stolen and it was later found by the police destroyed by fire.  The prosecution alleged that the defendant had set the fire himself to destroy evidence of the murder.  The prosecution sought to introduce evidence that, approximately a year later, defendant reported his own car as stolen and it too turned up destroyed by fire shortly thereafter.  The prosecution argued that this second theft and car fire cast doubt on the defendant's innocent explanation with respect to the rental car fire.

The Young Court concluded that evidence of the second vehicle fire was inadmissible because "[w]hen the relevance of an extrinsic act is contingent on proof of a fact, the trial judge may not allow the jury to consider the similar act unless there is evidence by which the jury could find by a preponderance that the fact is true." Id. at 373.  There was insufficient evidence, according to the court, that defendant had committed the second arson and, as such, the evidence could not be admitted under 404(b).

The instant case is easily distinguishable.  In Young, there was scant evidence linking the defendant to the second arson in that he was never charged with the arson and there was no apparent motive for it.  Here, Mr. Rachel is undeniably responsible for the invoices for the keyboard covers that included the markup.  Defendants suggest - without explaining -

7

that there is an innocent explanation for the markup and argue
that this evidence cannot be relevant because it requires proof
of a fact, i.e., that the markup was fraudulent.  See Opp'n at 6.
The Court is persuaded that a jury could find from the evidence
of the markup that it is more likely than not that Mr. Rachel
inflated the prices for fraudulent reasons.  Defendants, of
course, are free to rebut this explanation at trial by explaining
the costs associated with this markup.  While this would
certainly necessitate some additional testimony, the Court is not
persuaded that it would result in a time-wasting or distracting
"mini-trial."

     Evidence of the prior markup of the keyboard covers is
relevant to Mr. Rachel's knowledge and intent given that he
offers an innocent explanation for the markup of the hinge repair
kits - that the markup reflected legitimate warranty and design
costs incurred by CSM.  Evidence that he marked up another
product where these types of costs were not incurred is relevant
to rebut this explanation.  The similarity of the conduct with
respect to the hinge repair kits and the keyboard covers also
adds to its relevance.  See Queen, 132 F.3d at 996 ("The more
similar the extrinsic act or state of mind is to the act involved
in committing the charged offense, the more relevance it acquires
toward proving the element of intent.").

     With regard to the second two prongs of the test, since the
government must prove that Mr. Rachel acted with knowledge of the

8

falsity of the invoices, this evidence is "necessary" to prove an
element of the claim.  Finally, the evidence – which consists of
invoices from TDR and RGI – is reliable.[4]

With respect to Mr. Rachel's conviction, Defendants contend
that the evidence is not relevant because the Anti-Kickback Act,
41 U.S.C. § 53, under which Mr. Rachel was convicted, requires
proof that the defendant "'knew that he was making a payment in
order to induce a contract to be awarded.'"  Opp'n at 7 (quoting
United States v. Grossman, 400 F.2d 951, 954 (4th Cir. 1968)).
Defendants argue that since the FCA requires proof of an entirely
different state of mind, the evidence of the prior conviction
cannot be relevant.

This argument ignores the substance of the plea agreement
entered into by Mr. Rachel in which he admits that his company,
CSEI, provided "inflated" price quotes for the printer tear bars
that he acquired from his other company, RGI, which acquired the
tear bars at a much lower cost from TDR.  See Statement of Facts
as ¶¶ 5, 7; see also Plea Agreement at ¶ 8 (incorporating the
Statement of Facts into the Plea Agreement).  The illegal
kickbacks were funded from the payment of the inflated invoices.
See Statement of Facts at ¶ 3.  Given that Mr. Rachel's defense
in the instant case is that he marked up the prices for
legitimate reasons, evidence of the facts admitted as part of the
plea agreement that he has inflated prices for personal gain is

_____

[4]The Court will discuss the final prong – prejudice – infra.

9

highly relevant to rebut this explanation.[5]  Again, the similarity of the schemes also is striking.  As with the evidence concerning the keyboard covers, the evidence goes to his state of mind in that it tends to show knowledge of the falsity of the invoices submitted to DMSI.[6]

Lastly, Defendants argue that all of the 404(b) evidence that the government seeks to introduce should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice to Mr. Rachel and his co-defendants - his wife and the two companies owned by him.  This argument is without merit.  The Fourth Circuit has defined "unfair prejudice" as "'a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'"  United States v. Ham, 998 F.2d 1247, 1252 (4th Cir. 1997) (quoting United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980)).  The evidence at

_____

[5]The Court notes that there may be some prejudice inherent in the introduction of evidence of Mr. Rachel's conviction for making illegal kickbacks, a crime that is somewhat unrelated to the current claims with reference to overcharges.  The Court would be willing to entertain suggestions from the parties as to the means by which the government could introduce evidence of Mr. Rachel's admission that he inflated the prices of the tearbars without introducing evidence of the conviction itself.

[6]The government also attaches proof that Mr. Rachel was temporarily debarred from government contracting as a result of this conviction.  Mot., Ex. 5.  The Court cannot see how the fact of his debarment would be relevant to his intent or knowledge in the instant case.  Accordingly, absent some further showing as to the relevance of this evidence, it will be excluded at trial.

issue here is not of the type that is likely to arouse the emotions of the jury.  With respect to Mrs. Rachel, her defense is that she lacked knowledge of any of the transactions at issue in this case.  The Court cannot see how evidence that Mr. Rachel engaged in similar conduct would prejudice Mrs. Rachel or lead the jury to conclude that she also was involved in the other acts.  In any event, a limiting instruction will cure any potential prejudice.  Finally, with respect to the corporate defendants, both are wholly owned by Mr. Rachel and have no employees.  Accordingly, the evidence of Mr. Rachel's other conduct - particularly since he acted through RGI - is relevant to the claims against these defendants as well.  Any prejudice inherent in this evidence derives from its highly probative nature.  <u>See</u> <u>United States v. Mohr</u>, 318 F.3d 613, 619 (4th Cir. 2003) ("<u>[u]nfair</u> prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence") (internal citation omitted, emphasis in original).

For all of the above stated reasons, the government's motion to admit 404(b) evidence will be granted.  A separate order will issue.

_____/s/_____
William M. Nickerson
United States District Judge

Dated: February 26, 2008